# EXHIBIT "A"

U. S. Department of Agriculture
Natural Resources Conservation Service

NRCS-LTP-002
4-95

# LONG-TERM CONTRACT FOR NRCS COST SHARE PROGRAMS

Contract No. 60-2D37-7-340
Program Red & White Clay Program
State PA
County Chester

## PART I - Participant(s)

(1) Custom Casing, Inc. *(name)* — P. O. Box 416 *(address)* Avondale, PA 19311

(2) ______

(3) ______

Contract Period: from 9.26.97 to 12.31.2001

General Description of land unit (including location and acreage): Involves an existing SMS composting wharf and pad located off Newark Road, just south of Toughkenamon, PA with acres.

## PART II - Terms and Conditions

Each of the undersigned and above-named participants hereby agrees to participate in this NRCS cost-share program and by this participation agrees to all of the provisions of this contract, and agrees to all of the regulations issued by the Secretary of Agriculture governing the program which are hereby made a part of this contract, hereby agrees (1) to carry out on the land unit as shown in Part I hereof, land adjustments, cropping or grazing practices, and conservation practices in conformity with and as shown in the attached plan/schedule of operations, which is hereby made a part of this contract, according to the time schedule of conservation treatment and in accordance with the specifications and other special program criteria obtained from the local field office of the Natural Resources Conservation Service, (2) to forfeit all rights to further payments or grants under the contract and refund the United States or the Conservation District, all payments or grants received thereunder upon violation of the contract as shown in Attachment A which is hereby made a part of this contract, at any stage during the time that the participant has control of the farm if the Secretary or the Conservation District determines that such violation is of a nature as to warrant termination of the contract, or to make refunds or accept such payment adjustments as the Secretary or the Conservation District may deem appropriate if he determines that the participant's violation does not warrant termination of the contract, and (3) upon transfer of the participant's right and interest in the farm or ranch during the contract period to forfeit all rights to further payments or grants under the contract and refund to the United States or the Conservation District all payments or grants received thereunder unless the transferee of the farm or ranch agrees with the Secretary or the Conservation District to assume all obligations of the contract, (4) Special provisions are included and are hereby made a part of this contract. (5) All practices in the Plan/Schedule of operations will be maintained for the life of the contract.

## PART III - Participant(s) Signature(s)

Date: 9-26-97

(1) [signature] *(signature - for tax purposes)* — 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 *(social sec # or tax ID#)*

(2) ______ *(signature)* (3) ______ *(signature)*

## PART IV - Approval

By: [signature] *(contracting officer)* Date: 9.26.97

Contract No. 60-2D37-7-340
State: PA
County: Chester

SPECIAL PROVISIONS

1. PAYMENTS

(a) Payments will be made at cost-share rates specified in the contract for the actual amount or extent determined after work is performed. Payments will be based on average costs, unless it is provided in the Plan/Schedule of Operations that payment will be based on actual cost not to exceed the average cost of the specified maximum.

(b) Cost-share payments are based on the average cost or flat rate in effect at the time of starting the installation of a practice.

(c) Designation "AA" or "AM" following average cost in the cost-share rate column of the Plan/Schedule of Operations means the practice or identifiable component is to be cost-shared on the actual cost basis not to exceed the average cost or actual cost basis not to exceed a specified maximum. This must be documented by acceptable itemized receipts, invoices, or cost statements.

(d) Payments may be withheld, denied or collected back where participants (and or affiliated persons) violate FSA compliance provisions on this or affiliated units.

(e) No payment shall be made on items for which proper local and state permits have not been obtained by the participant.

(f) If payment is made to a different individual other than that person listed on Part I of the NRCS-LTP-002, see Item 7.

2. TIME SCHEDULE

Installation of a cost-shared practice must be started within one year (12 months) of the signing of the contract. All other contract items may be accomplished at any time prior to, or not later than, one year after the year shown under "Time Schedule" in the Plan/Schedule of Operations, without execution of a contract modification.1/

All required conservation treatment must be installed at least 2 years before expiration of the contract and all contact items must be accomplished prior to the expiration date of the contract.

1/ The contract officer may indicate contract items to be excepted for part or all of this provision by inserting a "T" above the cost-share or unit figure in the year column on the plan/schedule of operations.

3. MODIFICATIONS

Changes may be made in this contract through modifications which are agreed to by the participant(s) and the CO.

4. EQUAL OPPORTUNITY

(1) The participant agrees to include in any single contractual arrangement estimated to exceed $10,000 the non-segregated facilities provisions applicable to federally-assisted construction contracts.

(2) The participant agrees to comply with Executive Order 11246 and the non-segregated facilities provisions with regard to employment of people specifically to assist the participant in construction work estimated to exceed $10,000 to be installed in any 12 month period.

(3) The participant agrees to actively assist NRCS and/or the Conservation District in obtaining from the contractor full compliance with the non-segregated facilities provisions in any constructual arrangement entered into by the participant. The CO is to furnish the participant all forms, posters, and instructions for compliance with Executive Order 11246 and the non-segregated facilities provisions.

5. NONDISCRIMINATION STATEMENT

"The program conducted will be in compliance with the nondiscrimination provisions as contained in Titles VI and VII of the Civil Rights Act of 1964, as amended, the Civil Rights Restoration Act of 1987 (Public Law 100-259) and other nondiscrimination statutes, namely, Section 504 of the Rehabilitation Act of 1973, Title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, and in accordance with regulations of the Secretary of Agriculture (7 CFR-15, Subparts A&B) which provide that no person in the United States shall, on the grounds of race, color,

national origin, age, sex, religion, marital status or handicap, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program or activity receiving federal financial assistance from the Department of Agriculture or any agency thereof."

6. <u>DISPUTES AND APPEALS ON MATTERS OTHER THAN CONTRACT VIOLATIONS</u>

If any applicant or participant disagrees with a determination made by the district conservationist, the person must notify the contracting officer in writing on the nature, extent and reasons for the disagreement.

An applicant or participant may appeal to the Chief regarding a state conservationist decision regarding a dispute. This appeal must be in writing setting forth the disagreement with the State Conservationist's decision and must be made within 30 days of the decision.

See "Attachment A" for additional information on violations and violation procedures.

7. <u>ALTERNATIVE PAYMENT DISTRIBUTION</u>

A. It is further agreed that Rick Masha, represents the owner, Custom Casings Inc., and it is the participant who is responsible to carry out all practices and treatments which are outlined in the conservation plan. All payments will be made out to Custom Casings Inc. and sent to P.O Box 416 Avondale PA 19311. Application for Payment, SCS-FNM-141 shall be signed by [signature].

B. It is further agreed that all modification documents shall be signed in the name of [signature] acting for same owners.

**Verification of Ownership or Control of property during Contract period**

*Landowner / s by clear title*

I / We the undersigned hereby certify that I / We own legal title to the land units for which work is proposed under the Red and White Clay PL-566 project located at ____________________________________________. I / We also understand that any changes in ownership during the contract period shall follow procedures outlined in the NRCS General Manual, Section 120, Amend. 41, Section 404.55 Transfer of Land, dated April 1992.

*Operators by lease or rental Agreement*

I / We the undersigned hereby certify that I / We have control of the land units for the period of time for which work is proposed under the Red and White Clay PL-566 project located at Custom Cars Inc Newark Rd. ______. Attached is a copy of the lease between myself / us and the owner / entity that holds legal title to the above described property. I / We also understand that any changes in ownership during the contract period shall follow procedures outlined in the NRCS General Manual, Section 120, Amend. 41, Section 404.55 Transfer of Land, dated April 1992.

*Ownership by Corporations*

I / We the undersigned hereby certify that I / We own legal title to the land units for which work is proposed under the Red and White Clay PL-566 project located at Newark Road, south of Tony's Kennamen ______. In addition, it if further agreed that after the final contract is agreed upon and signed by all parties listed below, Rick Masha ______,(title) — ______ will be responsible to see that all practices and treatments specified in that contract will be fulfilled and all payments shall be made to this person whom represents this corporation. The application for Payment, SCS-FNM-141, shall also be signed by this same individual. I / We also understand that any changes in ownership during the contract period shall follow procedures outlined in the NRCS General Manual, Section 120, Amend. 41, Section 404.55 Transfer of Land, dated April 1992.

| Signed | Date | Signed | Date |
| --- | --- | --- | --- |
| Rick Masha [signature] | 9-26-97 | | |
| | | | |
| | | | |

# LEASE

THIS AGREEMENT, made the 26th day of September, 1997, by and between M.A.Y. Farm, Inc. (hereinafter called Lessor), of the one part, and Masha, Toto & Ciuffetelli, Inc. (hereinafter called Lessee), of the other part.

Lessor does hereby demise and let unto Lessee approximately sixteen (16) acres of land located in New Garden Township (Tax Parcel 60-3-64), Chester County, Pennsylvania, to be used and occupied as a spent mushroom soil processing facility, for the term of five (5) years beginning the 26th day of September, 1997, and ending the 26th day of August, 2002, for the minimum yearly rental of Thirty Six Thousand Dollars ($36,000.00), lawful money of the United States of America, payable in monthly installments during the term of this Lease in sums of Three Thousand Dollars ($3,000.00) on the first day of each month, rent to begin from the ____ day of ____, 1997.

1. It is agreed that in the event the Lessee is not permitted at any time during the lease term to use the subject property as a spent mushroom soil processing facility due to federal, state and/or local regulations and Lessee has no further need for the subject property prior to the expiration of the term of this Lease, then and in such event, this Lease shall cease and be terminated as of the end of the calendar month during which the Lessee shall surrender to the Lessor full and complete possession of the demised premises.

2. Lessor agrees to hold Lessee harmless for any property damage or any injury

to persons arising out of any negligence of the Lessor. Lessee in turn agrees to hold Lessor harmless for any property damage or any injury to persons arising out of any negligence of Lessee.

3. Lessee shall have the right of ingress and egress to such premises as the Lessee shall occupy under the terms of this Lease, over and through portions of the property occupied by Lessor.

4. The provisions of this Lease shall not be construed as reserving to the Lessor any right to exercise any control over the business or operations of the Lessee conducted upon the leased premises or to direct in any respect the manner in which any such business and operations shall be conducted.

5. The covenants and agreements contained in this Lease are binding upon and shall inure to the benefit of Lessor and Lessee and their successors and assigns.

6. This Lease represents the entire agreement between the parties hereto and there are no collateral oral agreements or understandings.

IN WITNESS WHEREOF, said parties have hereto set their hands and seals the day and year aforesaid.

ATTEST: M.A.Y. Farm, Inc.

_________________________ By: _________________________ (SEAL)

ATTEST MASHA, TOTO & CIUFFETELLI, INC.

M Cutone treas By: [signature] (SEAL)
Secretary

M Cutone Mushroom.
May Farm.

Attachment A - Violations.

CAUSES:

(a) Noncompliance. Failure to comply with all terms and conditions of the contract is noncompliance. This includes but is not limited to failure to carry out the LTC as scheduled, failure to begin within a 12-month period, failure to meet specifications for establishing practices, failure to satisfactorily complete or maintain all contract items, or failure of a practice because of circumstances within the control of the participant. If the participant removes the cause for noncompliance, a violation can be avoided.

(b) Practice destruction. Destruction of a practice established under the terms of the contract without approval of the CO (SAO on conservation district contracts) or failure to apply compensatory treatment for a destroyed practice.

(c) False application for payment. Filing a false application for cost-share payment.

(d) Failure to complete contract items. Failure to satisfactorily complete all contract items before the contract expires.

(e) Transfer of land under contract. If the transferee will not assume the obligations of the contract with respect to the transferred acreage, the transferor is subject to forfeiture and refund of payments received on the transferred acreage.

DETERMINATION OF VIOLATIONS:

(a) SCS-participant contracts.

(1) If noncompliance is not resolved, the DC is to furnish the CO any information obtained that indicates a violation may have occurred. The CO is required to ascertain if a violation has occurred and, if so, determine if a forfeiture, refund, payment adjustment, or termination is warranted (404.75).

(2) Following the investigation, the CO is to make a written report to the state conservationist. The report is to include information received by the CO and findings of fact and determination. If no violation has occurred or if a violation has occurred but no forfeiture, refund, payment adjustment, or termination is required, no further action is necessary.

A copy of the report of the CO, approved by the state conservationist, will be provided to all holders of copies of the contract.

(3) If a violation is apparent and forfeiture, refund, payment adjustment, or termination is required, the CO in consultation with the conservation district is to try to obtain an agreement. The agreement is to be on Form SCS-LTP-153, Agreement Covering Noncompliance (404.98 and 404.75).

(4) If no agreement is reached, a notice of violation is to be issued on Form SCS-LTP-151, Notice of Agreement or Contract Violation (404.99). This notice is to be forwarded to the participant by certified mail--return receipt requested. After a Notice of Agreement or Contract Violation has been issued, follow the procedure outlined in 404.62 and 404.75.

(a) Scope. This tion prescribes the regulations dealing with tract violations. No cost-share payment shall be made pending the decision on whether a contract has been violated.

(b) Determination by contracting officer. Upon notification that a contract may have been violated, the contracting officer is to—

(1) Determine, with the approval of the state conservationist, that a violation did not occur or that the violation was of such a nature that no penalty of forfeiture, refund, payment adjustment, or termination is necessary. No notice is issued to the participant, and no further action is to be taken; or

(2) Determine with the approval of the state conservationist that a violation did occur, but the participant agrees in writing to accept the penalty. If the participant agrees in writing to accept a penalty of forfeiture, refund, payment adjustment, or termination, no further action is necessary.

(c) Notice of possible violations.

(1) When the CO is notified that a contract violation may have occurred that may warrant a penalty or forfeiture, refund payment adjustment, or termination, the CO is to notify in writing each participant who signed the contract of the alleged violation. This notice may be personally delivered or sent by certified or registered mail. A participant is considered to have received the notice at the time of personal receipt acknowledged in writing, at the time of the delivery of a certified or registered letter, or at the time of the return of a certified or registered letter when delivery was refused.

(2) The notice setting forth the nature of the alleged violation is to give the participant an opportunity to appear before a hearing officer.

(d) Request for hearing.

The participant's request for a hearing is to be submitted in writing and must be received in the SCS field office or conservation district office within 30 days after receipt of the notice. The participant is to be notified in writing by the hearing officer of the time, date, and place for the hearing. Participants have no right to a hearing if they do not file a written request, or if they or their representative does not appear at the appointed time, unless the hearing officer permits an appearance at another specified time. A request for a hearing filed by a participant is considered to be a request by all participants who signed the contract. The request also supersedes any further bills for collection and interest charges if the violation involves refunds.

(e) Hearing officer.

(1) The hearing officer appointed by the state conservationist may not be the CO or anyone subordinate to the CO. If a violation involves considerable money or possible termination of a contract, it would be advisable to confer with the attorney in charge of the field office of USDA's Office of the General Counsel, who may also serve as hearing officer.

(2) The hearing officer appointed by the conservation district should be someone other than the CO. If a violation involves considerable money or possible termination of a contract, it would be advisable for the district to confer with their attorney.

The hearing officer is t[illegible] the hearing to relevant facts and evidence [illegible] is not to be bound by the strict rules of evidence as required in courts of law. Witnesses may be sworn in at the discretion of the hearing officer.

(1) Participants or their representatives are to be given full opportunity to present oral or documentary evidence about the alleged violation. Likewise, SCS or the conservation district may submit statements and evidence. Individuals not otherwise represented at the hearing may be permitted, at the discretion of the hearing officer, to give information or evidence. The hearing officer, at his or her discretion, may permit witnesses to be cross-examined.

(2) The hearing officer is to make a record of the hearing so that the testimony can be summarized. A summary of the testimony is to be made. A transcript of the hearing is to be made if requested by either the state conservationist, conservation district, or participant at least 10 days before the hearing. If a transcript is requested by the participant, the participant may be assessed the cost of a copy of the transcript.

(3) The hearing officer is to close the hearing after a reasonable time if the participant or the participant's representative is not present at the scheduled time. The hearing officer may accept information and evidence submitted by others present for the hearing.

(4) The hearing officer is to furnish the state conservationist or conservation district with a written report setting forth the findings, conclusions, and recommendations. The report is to include a summary of testimony or transcript of the hearing and any other information that would aid the state conservationist or soil conservation district in reaching a decision.

(g) Decision.

(1) The state conservationist, or the conservation district under conservation district-participant contracts, is to make a decision after considering the hearing officer's report, recommendation of the conservation district (for SCS-participant contracts), and any other information available. The decision is to state whether the violation is of such a nature as to warrant termination of the contract, or if the contract is not to be terminated, the amount of the forfeiture, refund, or payment adjustment. The state conservationist or conservation district is to notify in writing each participant who signed the contract of the decision. The state conservationist or conservation district may authorize or require the reopening of any hearing before a hearing officer for any reason at any time before the decision is rendered.

(2) If the decision provides for termination of the contract, it is to state that the contract is terminated, that all rights to further cost-share payments under the contract are forfeited, and which cost-share payments received under the contract are to be refunded. The decision is to state the amount of refund, interest charges, and method of payment. The decision also reinstates required bills for collection and interest charges where refunds are due (404.75).

(h) Appeal to the Chief.

Any participant adversely affected by a determination of the state conservationist or conservation district shall have the right of appeal to the Chief. A participant who wishes to appeal to the Chief must file an appeal with the office of the Chief. This appeal and any briefs or statements must be received within 30 days after the participant has received notice of the determination of the state conservationist. Where refunds are due, the appeal supersedes bills for collection and interest. The state conservationist or conservation district may file a brief or statement in the office of the Chief within 15 days after the participant's brief or statement is received there. The appeal shall be limited to the records and the issues made before the state conservationist or conservation district which records shall be submitted to the Chief by the state conservationist. The Chief will make a decision based upon the records and the issues presented by the appeal. The participant shall be notified of the decision in writing. There shall be no further appeal in the USDA. A final decision reinstates bills for collection and interest charges where refunds are due.

§404.55 Transfer of land.

(a) Land will be considered "transferred" if the participant loses control of the acreage for any reason. The term "transferor" means the participant who loses control, and the term "transferee" means the person who acquires control of the land. Table 404.1 (See Exhibit 404.109) provides guidance for determining the new financial and contract period limitations for the transferred contract.

(b) If all or part of a land unit under contract is transferred, the contract terminates with respect to the transferred acreage, however, the transferee may assume the obligations of the contract with respect to the transferred acreage. It is the transferor's responsibility to contact the transferee about assuming the responsibility of the contract. If the transferee will not assume the obligations of the contract with respect to the transferred acreage, the transferor is in violation and subject to forfeiture and refunds of payments received on the transferred acreage (404.75). This will not apply if the transfer is due to situations cited in 404.56(h) (1) or (2) or (3). See Exhibit 404.109 for Summary of Land Transfers Table Number 404.1

(c) The procedure for transferring the rights and obligations under a contract is dictated generally by the extent of the acreage transferred and how the land unit will be operated after the transfer.

(1) <u>If all of a land unit under contract is transferred and is to be operated as a separate unit</u>, a Transfer Agreement, Form SCS-LTP-152, is to be executed .. The transferee, by signing the transfer agreement, assumes all of the rights and obligations of the contract. The contract period of the original contract applies. The description of the acreage transferred and all practices to be carried out by the transferee are to be listed on the transfer agreement. The transferee is to be furnished a complete copy of the contract, including all modifications. The

original copy of the executed transfer agreement is to be filed with the original copy of the contract. Copies manually signed by both parties and the CO are to be furnished to the transferee and transferor. Conformed copies are to be furnished to all others having copies of the contract. Table 404.1 - Item 1.

(2) If all of the land unit under contract is transferred and is combined with another land unit under contract, transfer the obligations of the contract by modification of the contract, Form SCS-LTP-12. Prepare a contract modification to delete all remaining items from the transferor's contract. Modify the transferee's contract to add the acreage transferred and the practices remaining to be installed. The modification is also to list all of the practices carried out on the transferor's land unit and to provide that these practices be maintained by the transferee. Do not show cost-sharing information for practices already installed. They are to be designated numbered N/C (not cost-shared) in the transferee's contract. The contract period of the transferee's contract is not changed even though the dates on the two contracts may be different. Table 404.1 - Item 2.

(3) If only part of a land unit under a contract is transferred and not made part of another land unit under contract, prepare a new contract. Include all practices to be carried out on the transferred land and all practices installed on the transferred land that are to be maintained by the transferee. Do not show cost-sharing information for practices already installed. They are to be designated numbered N/C in the contract with the transferee. The new contract is to be for the period of time remaining in the transferor's contract. The transferred acreage and all applicable practices are to be modified out of the transferor's contract. This is to be done after the new contract is signed by the transferee. Table 404.1 - Item 3.

(4) If only part of a land unit under a contract is transferred and made part of another land unit under contract, transfer the acreage and obligations of the contract by modification. Two modifications are required, one to transfer the acreage and obligations from the transferor's contract, and one to transfer the acreage and obligations into the transferee's contract. The modification to transfer the acreage and the obligations out of the transferor's contract must not be approved by the CO before approving the modification transferring the acreage and obligations into the transferee's contract. Table 404.1 - Item 4.

(5) If all of the land unit under contract is transferred and is combined with another unit not under contract but the transferee has requested a contract, prepare a new contract. Include all practices to be carried out on the transferred land unit and all practices installed on the transferred land unit that are to be maintained by the transferee in the new contract. Do not show cost-sharing information on practices already installed. They are to be designated numbered N/C contract items in the new contract with the transferee. The transferred acreage and all practices are to be modified out of the transferor's contract. This is to be done after the new contract is signed by the transferee. Table 404.1 - Item 5.

Case 1:06-cv-00255-CCM Document 1 Filed 03/29/2006 Page 23 of 23

**RED/WHI :LAY CREEK LAND TREATMENT PROC M**
**PRELIMINARY REQUEST FORM**

1997

Landowner: (Please Print)

Name: Custom Cansing Inc. Rick Mohr

Address: P.O. Box 416 Avondale Pa.

P.O. ________ Zip: 19311 Ph: ________

Type of Operation: Recomposting

Return to: USDA Natural Resources Conservation Service
Government Services Center
601 Westtown Road, Suite 381
West Chester, PA 19382 (610) 696-0398
OR
Chester County Conservation District
Government Services Center
601 Westtown Road, Suite 395
West Chester, PA 19382 (610) 696-5126

| I am interested in: | Please check Yes | No | Extent if known? |
|---|---|---|---|
| 1. Waste Management Systems | ✓ | ___ | 1 (Total Number) |
| 2. Cropland Erosion Control | ✓ | ___ | 20.0 (Total Acres) |
| 3. Cropland Pest Management | ___ | ___ | ___ (Total Acres) |
| 4. Riparian Forest Buffer | ___ | ___ | ___ Total Acres or Miles) |
| 5. Wetland Restoration | ___ | ___ | ___ (Total Acres) |
| 6. Livestock Exclusion | ___ | ___ | ___ (Total Miles) |
| 7. Streambank Restoration | ___ | ___ | ___ (Total Feet) |

I hereby request a Preliminary Land Treatment Assessment in the Red/White Clay Creeks on the farm identified above. I understand that all Best Management Practices (BMP's) under such agreement will be consistent with a Mushroom Farm Environmental Management Plan or Water Quality Resource Management Plan approved by the Conservation District.

Date: 3-12-97 Signature of Landowner: [signature]

The United States Department of Agriculture (USDA) prohibits discrimination in its programs on the basis of race, color, national origin, sex, religion, age, disability, political beliefs, and marital or familial status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact the USDA Office of Communications at (202) 720-2791.

To file a complaint, write the Secretary of Agriculture, U. S. Department of Agriculture, Washington, D. C. 20250 or call 1-800-245-6340 (voice) or (202) 720-1127 (TDD). USDA is an equal employment opportunity employer.