IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RICK'S MUSHROOM SERVICE, INC.<br>1007-1013 Newark Road<br>New Garden Twp<br>P.O. Box 416<br>Avondale, PA 19311<br><br>v.<br><br>UNITED STATES OF AMERICA, acting through<br>The UNITED STATES DEPARTMENT OF<br>AGRICULTURE NATURAL RESOURCE<br>CONSERVATION SERVICE<br>United States Department of Agriculture<br>Washington, DC 20250 | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | <br>Case No. 06-255-C<br>(Judge Christine O.C. Miller) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS MOTION TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND/OR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

David J. Taylor, Esquire
Spriggs & Hollingsworth
1350 I Street, N.W.
Ninth Floor
Washington, D.C. 20005
(202) 898-5800

Of Counsel:

Jeffrey A. Krawitz, Esquire
Jonathan J. Bart, Esquire

Silverman Bernheim & Vogel
Two Penn Center
Suite 910
Philadelphia, PA 19102
(215)569-0000

## TABLE OF CONTENTS


| | | |
|---|---|---|
| I. | STANDARDS OF THIS MOTION | 6 |
| II. | NATURE OF THE CASE AND STATEMENT OF FACTS | 8 |
| III. | THIS COURT HAS SUBJECT MATTER JURISDICTION TO HEAR RICK'S CLAIMS | 13 |
| | A. This Action Involves A Claim Governed By The Contract Disputes Act | 13 |
| | B. Alternatively, This Court Has General Tucker Act Jurisdiction | 16 |
| | C. The Plaintiff Satisfied All Administrative Requirements Or Alternatively, They Should be Deemed Satisfied Under the Doctrine of Prudential Exhaustion | 19 |
| IV | PLAINTIFF'S CLAIM FOR EQUITABLE INDEMNIFICATION IS BASED ON THE SPEARIN DOCTRINE WHICH IS A LONG ESTABLISHED CAUSE OF ACTION | 24 |
| V. | CONCLUSION | 27 |
| | CERTIFICATE OF SERVICE | 27 |

# TABLE OF AUTHORITIES

## Cases

Ace Property and Casualty Insurance Company v. Federal Crop Insurance Corp., 440 F.3d 992, 997-999 (8th Cir. 2006) ... 21
Bailey v. United States, 46 Fed. Cl. 187, 210 (Fed. Cl. 2000) ... 13
Bethlehem Plaza v. Campbell, 403 F.Supp. 966, 967 (E.D.Pa. 1975) ... 7
Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 *7th Cir. 1984), cert. denied, 740 U.S. 1054 (1985) ... 7
Chevron USA v. United States, 71 Fed. Cl. 236, 256-59 (2006) ... 18
Commonwealth of Pennsylvania v. Brown, 373 F.2d 771, 778 (3d Cir. 1967) ... 8
Community Association for Restoration of the Environment v. Henry Bosma Dairy, 65 F.2d 1129, 1148-51 (E.D. Wash. 1999) ... 9
Conley v. Gibson, 355 U.S. 41, 45-46 (1957) ... 8
CP Squire Contractors, Inc. v. United States, 716 F.2d 865, 874 (Fed. Cir. 1983) ... 25
Die Casters Int'l, Inc. v. United States, 67 Fed. Cl. 362, 365, 378 (Fed. Cl. 2005) ... 15
DiNicola v. DiPaolo, 945 F.Supp. 848, 855 n.2 (W.D.Pa. 1996) ... 8
Doe v. United States, 135 F.3d 775, 1997 WL 794110 (Fed. Cir. 1997) (at *1) ... 16
Eastport S.S. Corp. v. United States, 372 F.2d 1002 (1967) ... 17
Electro Engineers, Inc. v. Dansig, 224 F. 3d 1283, 1289 (Fed. Cir. 2000) ... 25
Fed.R.Evid. 201 ... 7
Flying Horse v. United States, 49 Fed. Cl. 419, 426 (2001) ... 13
Franklin Pavkov Construction Company v. Roche, 279 F.3d 989, 994-95 (Fed. Cir. 2002) ... 25
Houston v. United States, 60 Fed. Cl. 507, 510 (Fed. Cl. 2004) ... 13, 16
In re Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. 1981) cert. dismissed, 462 U.S. 1125 (1983) ... 7
Institut Pasteur v. United States, 814 F. 2d 624, 627 (Fed. Cir. 1987) ... 14
Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991) ... 7, 8
Krumins v. Atkinson, 1996 W.L. 432, 477 (E.D.Pa. 1996) (at *1) ... 6
Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000) ... 8
Lopez v. AC&S, Inc., 858 F.2d 712, 716 (Fed. Cir. 1988) ... 25
Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) ... 7
McBride Cotton and Cattle Corp. v. Veneman, 290 F.3d 973 (9th Cir. 2002) ... 21
McNamara v. County Council of Sussex County, 738 F.Supp. 134, 137 (D.Del.), aff'd, 922 F.2d 832 (3d Cir. 1990) ... 7
Mortensen v. First Federal Savings and Loan Association, 549 F.2d 884, 891 (3d Cir. 1977) ... 6
Musson Theatrical, Inc. v. Fed. Express Corp., 89 F.3d 1244, 1248 (6th Cir. 1996) ... 7
Oregon Natural Recourses Counsel v. Lyng, 882 F.2d 1417, 1424 n.8 (9th Cir. 1989) ... 8
Randolph County Federal Savings & Loan Assn. v. Sutliffe, 775 F.Supp. 1113, 1115-16 (S.D. Ohio 1991) ... 7
Reynolds v. Rick's Mushroom Service (E.D.Pa. No. 01-3773) ... 2, 10
Rocks v. City of Philadelphia, 868 F. 2d 644, 645 (3d Cir. 1989) ... 8

Sanders v. United States, 252 F.3d 1329, 1334 .......... 16
Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991), cert. denied, 112 S.Ct. 1475 (1992) .......... 7
Scheuer v. Rhodes, 416 U.S. 232, 235-37 (1974) .......... 6
Stovall v. United States, 71 Fed. Cl. 696, 699 (Fed. Cl. 2006) .......... 16, 17
Stovall, supra at 700 .......... 18
United States v. Ritche, 15 F. 3d 592, 598 (6th Cir. 1994) .......... 6
United States v. Spearin, 248 U.S. 132, 136 (1918) .......... 1, 18, 25
United States v. Testan, 424 U.S. 392, 398 (1976) .......... 17
United States v. Windstar Corp., 518 U.S. 839, 885 (1996) .......... 17
USA Petroleum Corp. v. United States, 821 F.2d 622, 624 (Fed. Cir. 1987) .......... 25
White and Case, LLP v. United States, 67 Fed. Cl. 164, 170 (Fed. Cl. 2005) .......... 22
White and Case, supra at 170 .......... 22
White and Case, supra, at 170-71 .......... 23
White and Case, supra, at 171 .......... 24
White v. Edsall Construction Company, 296 F.3d 1081, 1084 (Fed. Cir. 2002) .......... 18, 25
Worthington v. United States, 168 F.3d 24, 26 (Fed. Cir. 1999) .......... 16
Young v. Francis, 820 F.Supp. 940, 943 (E.D.Pa. 1993) .......... 6

**Statutes**

33 U.S.C. §1251(a) .......... 8
41 U.S.C. §602 .......... 13
41 U.S.C. §602(a) .......... 14
41 U.S.C. §605(a) .......... 19
41 U.S.C. §609(a)(1) .......... 19
8 U.S.C. §1252(d)(1) .......... 22
Pub. L. No. 91-129, §1, 83 stat. 269, as amended by Pub. L. No. 92-47, 85 stat. 102, cited in, Texas State Commission for the Blind v. United States, 796 F.2d 400, 406 (Fed. Cir. 1986) .......... 14
U.S.C. §6912(e) .......... 19

**Treatises**

5A Wright & Miller, Federal Practice and Procedure 1364 at p. 479 (1990) .......... 8
Restatement (Second) of Contracts, §346, comment a (1981) .......... 17

**Regulations**

7 C.F.R. §614.1 .......... 19

Preliminary Statement

Permission to file this opposition to the motions to dismiss one day after the original due date of October 2, 2006, was granted informally by Chambers on Friday, September 29, 2006. Subsequently, counsel for the government informed plaintiff's counsel that she had no objection as well.

INTRODUCTION

This is a case arising under the contractual warranty of plans and specifications implied in a government contract - - a doctrine enunciated by the United States Supreme Court in the United States v. Spearin, 248 U.S. 132, 136 (1918) and reiterated numerous times both by this Court and the Federal Circuit. As the Supreme Court held in Spearin, where the government provides detailed plans and specifications and the contractor is not permitted to deviate from those plans and specifications, "the contractor will not be responsible for the consequences of defects in the plans and specifications." Id. at 136 That is precisely the nature of this lawsuit.

In this case, Plaintiff Rick's Mushroom Service ("Rick's") was solicited by the owner of a parcel of land in New Garden Township, Chester County, Pennsylvania to operate a spent mushroom substrate ("SMS") recycling and transfer station, which had been operated at that property for many years. Prior to making the commitment to operate the facility, Rick's consulted with the Pennsylvania Department of Environmental Protection, which indicated that it would not permit the station to operate without environmental controls and that to obtain the necessary approvals and/or permits, Rick's would have to install environmental controls such that polluted runoff waters from the SMS would not flow down to nearby Trout Run and neighboring properties. The

DEP put Rick's in contact with the National Resource Conservation Service of the U.S. Department of Agriculture ("NRCS"), which informed Rick's that in order to operate the facility, it would be required to sign a contract drafted by the NRCS to build an environmental control facility in conformity with state and federal environmental statutes (the "Contract"). The Contract (Exhibit "A" hereto) required Rick's to strictly follow without deviation design specifications provided by the NRCS, utilize only contractors approved by the NRCS, operate the facility pursuant to NRCS standards and supervision, as well as to follow equal opportunity and non-discrimination provisions dictated by the NRCS. The Contract provided that the NRCS world share the cost of constructing the facility but that all cost sharing would be forfeited if Rick's did not adhere to the plans and specifications, the equal opportunity and nondiscrimination provisions, as well as the conservation treatment and practices mandated by the NRCS. The cost sharing never was forfeited, proving that Rick's did everything it was supposed to do under the Contract.

There is no dispute that the NRCS was entirely responsible for the design of the facility and that Rick's did not deviate from the plans and specifications as designed. According to Peter Vanderstappen, who testified in the District Court action of Reynolds v. Rick's Mushroom Service (E.D. Pa. No. 01-3773):

> Q: Do you know a - - well, let me ask you this. Did Rick's Mushroom Service ever deviate from the design of the facility as you designed them and as they were constructed?
>
> A: Deviate from the design? No not to my knowledge."

[Exhibit "B" hereto].

Unfortunately, the design was defective. It drained far too large an area into the SMS leachate impoundment, causing Rick's to be forced to make emergency discharges

during heavy rains during the Fall of 1993 and other times of high water. These emergency discharges were required because, contrary to sound engineering practices, no emergency mechanism was designed into the facility to permit SMS leachate to be pumped out by truck when the impoundment was full – even though the operational requirements mandated such pumping. As a result of these design defects, a neighbor, Warren Reynolds, brought suit against Rick's seeking damages, costs and attorneys fees under the Federal Clean Water Act ("CWA"), the Pennsylvania Clean Streams Law and other related statutes. After the District Court entered partial summary judgment in favor of the plaintiff on the CWA claim due to the fact that unpermitted point source discharges had been made into Trout Run, Rick's was forced to settle that action for $950,000 and enter into an agreement to close the facility. Although the NRCS at all times knew of the litigation, testified in discovery and at trial, and had an opportunity to defend its design, it refused to intervene in the case and defend what were, in effect, allegations against it. Accordingly, Rick's was forced to incur hundreds of thousands of dollars in attorneys fees, expert fees and costs.

Contrary to the government's Statement of the Case, this is not a "professional liability" tort law suit. Rather, it is precisely the type of claim which the Supreme Court authorized in Spearin - - a case which remarkably is omitted from citation anywhere in the government's entire 27 page brief. That gaping hole in the government's analysis is fatal to its arguments. Rick's claim for equitable indemnification arises out of the Spearin case as an "implied in **fact**" duty of the government implied into the contract between the parties. It is neither a tort theory, nor an "implied at law" contract theory.

The NRCS entered into a contract for Rick's to construct a facility to assist the government in pursuing its policy to reduce and minimize agricultural pollution, especially for the mushroom industry, the largest agricultural business and employer in Chester County, Pennsylvania. In furtherance of that policy, the NRCS agreed to pay for approximately half the cost of the facility as long as Rick's maintained strict adherence to the design specifications provided by its engineer. It is now a litigated fact that the NRCS provided faulty designed specifications - - something also specifically recognized by the NRCS when it formulated a "Rehabilitation Plan" which drastically reduced the amount of runoff flowing into the facility's improvement. (Exhibit "C" hereto). Indeed, Rick's did not qualify for permits from the Pennsylvania Department of Environmental Protection until after the runoff had been reduced so that the facility could handle sizable storms without overflowing. The faulty design of the NRCS resulted in a settlement which will shortly culminate with the closure of Rick's facility. At a minimum, Rick's is entitled to recover the cost which it expended in building the facility to the NRCS' specifications - - approximately $300,000, and it should also be able to recover the costs and fees of defending the Reynold's lawsuit, which now can be liquidated in the amount of $950,000 in damages and approximately $500,000 in attorney and expert fees. At a maximum, Rick's should be entitled to recover its lost profits.

The government's assertion that the claim is barred due to the alleged failure to exhaust administrative argument is both factually and analytically fallacious. First of all, as a Contract Dispute Act ("CDA") claim, Rick's did exhaust all necessary administrative remedies. To the extent the CDA does not apply and this case rests solely on general Tucker Act jurisdiction, the government should be estopped from asserting an exhaustion

of remedies defense. As the NRCS' Contracting Officer's letter denying Rick's claim (Exhibit "D") plainly provided, Rick's had the right either to pursue administrative remedies or bring this action. To assert that Rick's should not have relied on the Contracting Officer's letter such that it is deprived of its day in court is unseemly. Finally, contrary to the government's reliance on old case law, administrative exhaustion is not jurisdictional. Rather, it is subject to the doctrine of prudential exhaustion, which is satisfied in this case. This is a Spearin doctrine contract claim for recovery of the costs advanced by Rick's pursuant to the Contract and for costs incurred in related litigation due to faulty design specifications provided by the NRCS. A Spearin claim does not implicate technical determinations or program decisions that are the goal of the exhaustion requirement. Moreover, administrative exhaustion would be a futile gesture as the appeal would involve not a rule or regulation interpretation, but an admission by the NRCS that it had been negligent and owed contract damages to Rick's. The NRCS already has denied this claim at its highest levels. In such cases, administrative exhaustion is not required as it would be futile. Third, the NRCS has had six (6) years to intervene and protect its contractor and chose to let it incur the cost and expense of its negligence – to make Rick's pursue administrative channels after all this time would be wholly inequitable. Moreover, Rick's would obviously suffer incurable prejudice arising out of the notice of the right to sue given by the Contract Officer. At this point, an administrative appeal would be untimely. The government surprisingly takes the position that Rick's should have ignored NRCS' own Contracting Officer's notice of right to appeal to this court in favor of bringing an expensive and obviously futile administrative appeal. Equity does not permit such a result. Even assuming that this is not a CDA

claim, administrative exhaustion is not required in a Spearin claim against the NRCS and even if it were, the doctrine of prudential exhaustion would excuse Rick's from having to proceed down that road.

## I. STANDARDS FOR THIS MOTION

The United States has moved to dismiss Rick's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction can take two forms: it can attack a complaint on its face, known as a "facial attack," or it can attack the substance of the allegations of subject matter jurisdiction, commonly referred to as a "factual attack." See, Mortensen v. First Federal Savings and Loan Association, 549 F.2d 884, 891 (3d Cir. 1977); Krumins v. Atkinson, 1996 W.L. 432, 477 (E.D.Pa. 1996) (at *1); Young v. Francis, 820 F.Supp. 940, 943 (E.D.Pa. 1993). As held by the Third Circuit in Mortensen:

> [B]ecause at issue in a factual 12(b)(1) motion is the Trial Court's jurisdiction - - its very power to hear the case - - there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Id. at 891 (emphasis added). Accord, Young v. Francis, supra, 892 F.Supp. at 943. However, where, as here, a defendant is responding to a facial attack on subject matter jurisdiction as pleaded, the trial court must take all material allegations of the complaint as true and construe them in the light most favorable to the non-moving party. Scheuer v. Rhodes, 416 U.S. 232, 235-37 (1974); United States v. Ritche, 15 F. 3d 592, 598 (6th Cir. 1994) . In short, in a facial attack such as the instant motion, the plaintiff's burden to establish subject matter jurisdiction is not onerous. Musson Theatrical, Inc. v. Fed.

Express Corp., 89 F.3d 1244, 1248 (6th Cir. 1996). The plaintiff must show only that the complaint alleges a claim under federal law and that the claim is "substantial." Id A federal claim is substantial unless "prior decisions inescapably render it frivolous." Id. The plaintiff can "survive the motion by showing any arguable basis in law for the claim made." Id

On a motion to dismiss a complaint for failure to state a claim for relief pursuant to Fed.R.C.P.12(b)(6), all well-pleaded facts in the Complaint are deemed to be true. McNamara v. County Council of Sussex County, 738 F.Supp. 134, 137 (D.Del.), aff'd, 922 F.2d 832 (3d Cir. 1990); Bethlehem Plaza v. Campbell, 403 F.Supp. 966, 967 (E.D.Pa. 1975). However, unsupported conclusions without a factual basis and sweeping conclusions of law cannot be utilized by a plaintiff to defeat a motion to dismiss. Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991), cert. denied, 112 S.Ct. 1475 (1992); Randolph County Federal Savings & Loan Assn. v. Sutliffe, 775 F.Supp. 1113, 1115-16 (S.D. Ohio 1991). In order to avoid dismissal, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 *7th Cir. 1984), cert. denied, 740 U.S. 1054 (1985); In re Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. 1981) cert. dismissed, 462 U.S. 1125 (1983).

In the consideration of a motion to dismiss pursuant to Rule 12(b)(6), the court must limit itself to facts stated in the Complaint, in documents attached to the Complaint, and matters of which judicial notice may be taken under Fed.R.Evid. 201. Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991); Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986); Commonwealth of Pennsylvania

v. Brown, 373 F.2d 771, 778 (3d Cir. 1967). Judicial notice may be taken of matters of public record without converting a motion to dismiss into a summary judgment motion. 5A Wright & Miller, Federal Practice and Procedure 1364 at p. 479 (1990); Kramer v. Time Warner, Inc., supra. 937 F.2d at 773 (3d Cir. 1991); DiNicola v. DiPaolo, 945 F.Supp. 848, 855 n.2 (W.D.Pa. 1996). As always, the applicable standard of review for a Rule 12(b)(6) motion requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. Rocks v. City of Philadelphia, 868 F. 2d 644, 645 (3d Cir. 1989). Dismissal of a complaint is proper only "where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000).

## II. NATURE OF THE CASE AND STATEMENT OF FACTS

The Federal Clean Water Act ("CWA")established a comprehensive program to clean up the nation's water systems, in part through reduction and eventual elimination of the discharge of pollutants into those waters. See, 33 U.S.C. §1251(a). The CWA divides sources of water pollution into two categories: (1) "point source" pollution, and (2) "non-point source" pollution. Point source pollution is characterized by a discrete source, such as factories and other sources with "end of pipe" discharges. Non-point source pollution is not defined, but has been construed to mean any source "not associated with a discrete conveyance...include[ing] runoff from fields and forests." Oregon Natural Recourses Counsel v. Lyng, 882 F.2d 1417, 1424 n.8 (9th Cir. 1989), as modified , 889 F.2d 1565 (9th Cir. 1990. In furtherance of the CWA, the United States Department of Agriculture National Resource Conservation Service ("NRCS") has

engaged in an initiative to reduce both point and non-point source agricultural pollution by inspecting and regulating agriculture facilities and entering into contracts to construct facilities designed by NRCS on a "cost sharing basis" with the owners of such agricultural land and facilities. See, e.g., Community Association for Restoration of the Environment v. Henry Bosma Dairy, 65 F.2d 1129, 1148-51 (E.D. Wash. 1999).

In furtherance of its [role at policy] in implementing the CWA, the NRCS, as alleged in the complaint, informed the owners of Rick's Mushroom Service that if it were to take over the operation of a long established spent mushroom soil ("SMS") transfer and composting operation in Chester County, Pennsylvania, it would have to construct an environmental control facility **designed by the NRCS with no deviation permitted from specifications** which was designed to eliminate runoff from the facility into nearby Trout Run. The SMS operation was essential as mushroom farmers, constituting the largest agricultural industry in that region of Pennsylvania, need a place to take their SMS after harvesting a crop of mushrooms. The alternative for mushroom growers is to simply dump their SMS in fields and streams, which results in polluted runoff.

While the NRCS easily could have constructed its own facility and taken deliveries of SMS to advance its administrative policies, it chose to proceed to advance its policy by entering into the Contract with Rick's in which the NRCS would design and pay for the bulk of the construction of the facility, which would be actually constructed by a contractor approved by the NRCS and that Rick's would be responsible for operation and maintenance of the facility (subject to NRCS supervision) after its construction.

After construction of the facility, Rick's was sued by a neighboring landowner who argued that not withstanding the construction of the facility, there still were point source runoffs into Trout Run during times of heavy rain and that Rick's had no mechanism to pump out its SMS storage lagoon when it was full. The District Court in Reynolds v. Rick's Mushroom Service, (E.D. Pa. No. 01-3773) agreed with the plaintiff's allegations and entered partial summary judgment in favor of the plaintiff in that suit – a suit which revealed that the NRCS negligently designed the facility such that acreage was miscalculated and vastly greater areas drained into the lagoon then were necessary, resulting in overflow as well as numerous less crucial design errors, such as the placement of irrigation sprinklers, land boundaries, etc. The NRCS thus drafted a "Rehabilitation Plan" (Exhibit "C" hereto) which implicitly acknowledged the design defects of the original design and completely refitted the facility such that it was able to obtain permitting from the Pennsylvania Department of Environmental Protection, acting on its own behalf and on behalf of the Federal Environmental Protection Agency. Meanwhile, however, Rick's was saddled with an enormously expensive lawsuit and the NRCS refused to intervene and defend its design. The ultimate result of the lawsuit is the impending closure of the facility (thus depriving Rick's of the benefit of its own investment in the facility, including lost profits) and the payment of $950,000 in damages, together with the incurring of approximately $500,000 in attorneys fees of its own.

The question raised by the government in its motion to dismiss is whether a cost sharing contract for the construction of a pollution control facility in furtherance of the policies and directives of the NRCS constitutes the provision of a "service" as defined

under the Contract Disputes Act such that a Spearin claim for the negligent design of the facility by the NRCS constitutes a claim arising under the CDA. The government acknowledges that if the CDA applies, then this Court indisputably would have subject matter jurisdiction to hear the claim, as Rick's pursued the claim to the contracting officer, who denied the claim and gave Rick's the option of further administrative review or initiating an action in this Court, which Rick's chose to do. Rick's notes that the government has failed to cite to a single case holding that a cost sharing contract somehow takes what otherwise would clearly be a contract under the CDA out of the ambit of that statute. As with the government's entire analysis, Rick's submits that the government places form ahead of realty. If the NRCS had contracted with Rick's to construct the facility according to its design specifications on Department of Agriculture property, there would be no question whatsoever that this case would arise under the CDA. Why should there be any difference simply because the same facility was constructed by NRCS's approved contractors according to strict NRCS specifications, but was built on Rick's land according to a cost sharing contract? Rick's suggests that there is no analytical difference between the two situations and that the claim has properly been brought under the Contract Disputes Act. Indeed, the case law suggests that cost sharing contracts may, in fact, come within the CDA.

While the government acknowledges that if the CDA does not apply, the breach of contract claim would arise under the Tucker Act, Rick's should be barred from pursuing that claim because it did not exhaust its administrative remedies. Rick's submits that such a theory is disingenuous, at best. The pursuit of administrative remedies is only required to permit the NRCS to make technical or plan determinations.

The flat denial of a Spearin claim does not fall within that definition. Moreover, the pursuit of administrative remedies in a Spearin claim obviously would be futile. The NRCS has been asked to reimburse Rick's its cost of constructing the negligently designed facility and reimburse Rick's for the cost and the damages incurred in defending the NRCS's design. At all relevant times, the NRCS has known of the Reynolds' lawsuit (and indeed, testified at length during that lawsuit) and chose not to intervene – leaving Rick's to hold all the cards (bad ones at that). It did not intervene and defend its design as it had every opportunity to do and should have done out of moral obligation. To suggest that the pursuit of administrative remedies will convince the NRCS to do what it has thus far failed to do for six years (the Reynolds' lawsuit was commenced in 2001) is fantasy. The pursuit of administrative remedies would result in exactly what happened when the claim was presented to the contracting officer – it was flatly and quickly denied. (Exhibit "D" hereto). Moreover, the denial letter itself offered Rick's the right to proceed directly in this Court. It is unseemly for the government to suggest that a party should not be permitted to rely on the direct representation of the government that it may proceed with a court action and pursue such an action at its own peril. What the government fails to state in its Brief is that the time for pursuing administrative remedies has passed and that were this claim to be dismissed for failure to exhaust administrative remedies, Rick's would be left without a remedy at all. Under such circumstances, where an administrative appeal clearly would be futile and the claimant would be prejudiced by the necessity to proceed through administrative remedies, the doctrine of prudential exhaustion is applied and exhaustion of administrative remedies is deemed to be satisfied.

The government cites to old law which has been clearly superceded in the recent cases to support its argument that administrative exhaustion is jurisdictional.

Finally, the government argues that plaintiff's Spearin claim is an implied in-law contract over which this Court lacks jurisdiction. That simply is incorrect. It has been held repeatedly that a Spearin claim is an "implied in fact" obligation of a government contract and that the Court certainly has jurisdiction to consider such a claim. Accordingly, the government's motions should be denied in all respects.

## III. THIS COURT HAS SUBJECT MATTER JURISIDCTION TO HEAR RICK'S CLAIMS.

### A. This Action Involves A Claim Governed By The Contract Disputes Act.

The Contract Dispute Act applies to contracts with executive agencies for the procuring of goods and services. 41 U.S.C. §602. As discussed above, it is the policy and governmental directive to the NRCS that it design and construct facilities for the reduction of agricultural runoff pollution. That is precisely what occurred in this case. While the CDA does not define the term "service", the accepted meaning of the term is "employment and duties or work for another, especially a government." Houston v. United States, 60 Fed. Cl. 507, 510 (Fed. Cl. 2004) citing, Flying Horse v. United States, 49 Fed. Cl. 419, 426 (2001). The government apparently argues that a cost sharing contract is an agreement of collaborative partners rather than one for the procurement of services to advance NRCS policy, which would be the hallmark of a CDA contract with the NRCS. See, e.g., Government's Brief at p. 12 fn. 6. Bailey v. United States, 46 Fed. Cl. 187, 210 (Fed. Cl. 2000) (and cases cited therein).

The Contract Disputes Act provides as follows:

> §602. Applicability of Law.
>
> (a) Executive Agency Contracts.
>
> Unless otherwise specifically provided herein, this Chapter applies to any express or implied contract…entered into an executive agency for –
>
> (1) the procurement of property, other than real property in being;
>
> (2) the procurement of services;
>
> (3) the procurement of construction, alteration, repair or maintenance of real property; or
>
> (4) the disposal of personal property.

41 U.S.C. §602(a).

As the legislative history of the Contract Dispute Act provided,

> The CDA is an implementation of recommendations made by the commission on government procurement, created by Congress in 1969, to promote economy, efficiency and effectiveness in the procurement of goods, services and facilities by and for the executive branch of the federal government by – (1) establishing policies, procedure, and practices which will require the government to acquire goods, services and facilities of the requisite quality and within the time needed at the lowest reasonable cost, utilizing competitive bidding to the maximum extent practicable.

Pub. L. No. 91-129, §1, 83 stat. 269, as amended by Pub. L. No. 92-47, 85 stat. 102, cited in, Texas State Commission for the Blind v. United States, 796 F.2d 400, 406 (Fed. Cir. 1986). The United States Court of Appeals for the Federal Circuit has written that whether the CDA applies, even if apparently clear on a purely linguistic level, may require interpretation where the agency's interpretation does not do justice to the realities of the situation. Institut Pasteur v. United States, 814 F. 2d 624, 627 (Fed. Cir. 1987). The "realities of the situation" in the instant case mandate a finding that this was a

properly brought claim under the CDA. It was the NRCS which mandated the construction of the facilities at Rick's if Rick's were to operate the long existing SMS facility, which had no pollution controls at the time Rick's sought to take over its operation. The service provided is essential for mushroom growers in the largest mushroom growing region in the United States, as they must have a place to take their SMS rather than simply dumping it in the fields and streams causing massive runoff pollution. The NRCS could have undertaken to construct its own facility on Department of Agriculture land, but chose to do it in a different matter. The simple fact that the services provided by Rick's were performed under a cost-sharing contract does not take the contract out of the ambit of the CDA. See, e.g., Die Casters Int'l, Inc. v. United States, 67 Fed. Cl. 362, 365, 378 (Fed. Cl. 2005) (contract with cost sharing provisions subject to CDA). The differences between a direct contract for Rick's to build the facility for NRCS or a cost-sharing contract are miniscule. The NRCS designed the facility, mandated that there be no deviation from the design specifications, and mandated the choice of contractors, which, of course, determined the price of the facility. The NRCS also mandated both operational specifications and behavioral specifications (such as non discrimination and equal opportunity). **In all respects, this facility was the NRCS's creation.**

Clearly, under the above definition, Rick's provided a service to the government by serving as the general contractor for the project. However, where, as here, the government mandates design specifications in a contract for which no deviation is permitted, the Spearin doctrine provides for an implied warranty of those specifications that those specifications are not negligently designed. The breach of the Spearin

warranty has been held time and time again to create a cause of action by contractor against the government. It is an implied obligation of the contract between the parties and accordingly, the government's suggestion that the contract did not provide for the payment of damages is a shallow analysis. Spearin claims have been authorized against the government for over 80 years and this is a contract which arises under the CDA. Accordingly, since there is no dispute that Rick's properly pursued its remedies according to the CDA by sending the claim in writing to the Contracting Officer, who made a final decision, this Court has jurisdiction, **as stated in the contracting officer's own denial letter**. Exhibit "D" hereto. This Court clearly has subject matter jurisdiction over the CDA claim.

**B. Alternatively, This Court Has General Tucker Act Jurisdiction.**

Initially, the government suggests that in order to establish jurisdiction under the Tucker Act, the plaintiff must have either proceed under a contract or a statute that mandates that a plaintiff is entitled to recover money damages from the United States and that the contract specifically provides for the government to pay monetary damages in the event it breaches the contract. Government's Brief at pp. 12-13, citing, Worthington v. United States, 168 F.3d 24, 26 (Fed. Cir. 1999); Houston v. United States, 60 Fed. Cl. 507, 511 (2004). However, this standard applies only to claims in which the government is acting in its sovereign, rather than its proprietary capacity. Doe v. United States, 135 F.3d 775, 1997 WL 794110 (Fed. Cir. 1997) (at *1). In proprietary contract situations such as the case at bar, while claims under the Tucker Act must be payable in money, this requirement is met by a simple presumption – that damages will be available upon a breach. Stovall v. United States, 71 Fed. Cl. 696, 699 (Fed. Cl. 2006), citing Sanders v. United States, 252 F.3d 1329, 1334 ("It is no doubt also true that in the area of

government contracts, as with private agreements, there is a presumption in the civil context that a damage remedy will be available upon the breach of an agreement.");[1] United States v. Windstar Corp., 518 U.S. 839, 885 (1996) ("[D]amages are always the default remedy for breach of contract.") (plurality opinion) citing, e.g., Restatement (Second) of Contracts, §346, comment a (1981). Accordingly, as held by the Supreme Court, there is no requirement under the Tucker Act that a contract must include specific language indicating that damages will be paid upon a breach. Stovall v. United States, supra, 71 Fed. Cl. at 700, citing, United States v. Testan, 424 U.S. 392, 398 (1976) and Eastport S.S. Corp. v. United States, 372 F.2d 1002 (1967). As this Court unambiguously stated in Stovall:

> Cases in this Court that can be read otherwise [to require specific language indicating damages will be paid upon a breach] appear to conflate the requirement that claims be payable in money with the Eastport money-mandating analysis, thereby abetting, at the least, erroneously theorized judgments....**Rather, the requirement that there be unmistakable language mandating a payment upon a breach applies only to the relatively narrow band of cases that can be correctly characterized as involving agreements only entered into by the sovereign**. To recur where the law otherwise, this Court would have lacked jurisdiction over Winstar and all of its various progeny, none of which involved contracts containing "money mandating" language. See, generally, San Juan City College, 391 F.3d at 1361 ("Normally, contracts do not contain provisions specifying the basis for the award of damages in the case of breach, with the exception of provisions governing damages in particular situations, such as liquidated damages for delay or other specified breaches.")

Id. at 700.

---

[1] Sanders also makes clear that an agreement falls within the excluded sovereign realm only where it is the source of agreement that can only be executed by the sovereign. Clearly, the instant contract for the construction of a waste water facility is not such a contract and this agreement falls within the proprietary, rather than the sovereign realm.

Thus, the latest pronouncements of this Court, properly interpreting the Supreme Court and Federal Circuit authority, provide that the analysis suggested by the government simply is incorrect. In a proprietary contract such as this, there is no requirement that the contract specifically provide to bind the government to pay monetary damages nor that the contract specifically provide that the government must pay damages in the event of a breach. Rather, that analysis applies only to sovereign act cases, of which this is not one. The government's analysis also fails in the sense that Spearin and all of its progeny do not involve claims which arise out of contracts providing for the payment of money in the event of breach. Rather, the warranty of specifications entitling a contractor to damages in the event that the design specifications are negligently formulated is an implied duty which the courts have read into government contracts notwithstanding any specific language. See, e.g., United States v. Spearin, 248 U.S. 132, 136-37 (1918); White v. Edsall Construction Company, 296 F.3d 1081, 1084 (Fed. Cir. 2002) (and cases cited therein). Indeed, as the Federal Circuit stated in White, even general disclaimers requiring the contractor to check plans and determine product requirements do not overcome the implied warranty nor shift the risk of design flaws to contractors who follow specifications. Id. at 1085.

Accordingly, the government's argument that a Tucker Act claim requires a contract to (1) provide specifically for the payment of money in the event of breach and (2) which specifically places authority in the hands of the person who signed the contract on behalf of the United States to bind the government to pay monetary damages, is an erroneous analysis. All that is required for Tucker Act jurisdiction is a contract with the government because inherent in every breach of contract is a right to monetary damages.

Chevron USA v. United States, 71 Fed. Cl. 236, 256-59 (2006); Stovall, supra at 700. There clearly is jurisdiction for this claim under the Tucker Act.

**C. The Plaintiff Satisfied All Administrative Requirements Or Alternatively, They Should Be Deemed Satisfied Under The Doctrine Of Prudential Exhaustion.**

The government concedes that the plaintiff proceeded correctly pursuant to the Contract Disputes Act, 41 U.S.C. §605(a) which provides that "all claims by a contractor against the government relating to a contract shall be in writing and submitted to the contracting officer." If the contracting officer denies the claim, the party may file an action in this Court [the Court of Federal Claims] 41 U.S.C. §609(a)(1). That procedure indisputably was followed in this case. Thus, if the CDA applies, and Rick's suggests that is does apply, the administrative exhaustion requirement has, in fact, been satisfied.

To the extent that this contract is not governed by the CDA, but rather, is based upon the court's general Tucker Act jurisdiction, the government argues that plaintiff has failed to comply with the statutory exhaustion requirements of 7 U.S.C. §6912(e). Government's Brief at pp. 8-12. Of course, as with the government's entire analysis, there is no mention of Spearin claims or suggestion how a Spearin claim fits within the dispute mechanism cited at 7 C.F.R. §614.1, upon which the government relies. Indeed, that regulation applies only to "adverse technical determinations and program decisions made by the NRCS involving the watershed protection and flood prevention program." This case has nothing to do with watershed protection and flood prevention, nor does it affect any "technical determinations or program decisions". Rather, it involves the breach of the implied warranty of specifications which the Supreme Court held applies to all government contracts in which the government provides non-waivable design specifications and arises in a claim for breach of contract due to the violation of the

Spearin warranties. Not a single case relied upon by the government in its exhaustion argument involve such a claim. Moreover, research does not uncover any Spearin cases dismissed for failure to exhaust administrative remedies. Indeed, the government's failure to even cite to Spearin in its entire Brief demonstrates its lack of understanding of the nature of this claim. While the creativeness in attempting to fit the "square peg into the round hole" may be commended in the government's attempt to avoid its liability for drawing up what already has been judicially found to be faulty specifications, the analysis simply does not fit this fact pattern. This is not a case involving program determinations by the NRCS as to the propriety of the specifications is at issue, or where additional work has been ordered to correct what a contractor believes to be a design defect but the government believes relates to the improper work of the contractor. Rather, the work has been long completed and the NRCS has been on notice of the alleged defect since 2001.

The NRCS made the voluntary determination not to intervene in the District Court lawsuit and chose to do nothing to correct the specifications until after the court made its ruling that the specifications were defective. At that time, and only at that time (2004), the NRCS issued its "Rehabilitation Plan" thereby acknowledging the defective nature of its originally specifications. To suggest that Rick's is required to go through further administrative channels when all factual findings as to the adequacy of the specifications already have been made and where the NRCS has been on notice of the claim for five years, is wholly inequitable.

What makes this even more inequitable is that the NRCS's Contracting Officer's letter denying the claim specifically stated that an appeal could be taken to this Court. Now the government takes the unseemly position that not only was this representation

false, but that reliance on this representation was Rick's own fault and that even though the time to pursue administrative remedies has expired, Rick's should be thrown out of court. Government's Brief at pp. 11-12. Of course, the government does not cite a single case asserting that a contractor follows the suggestions of a Contracting Officer at its own peril. At a minimum, any relegation to administrative remedies should be conditioned on waiver by the government of the time limits for administrative appeals. Otherwise, the government should be estopped based on its own conduct from making the argument that Rick's was relegated to administrative remedies notwithstanding its Contract Officer's statement that Rick's could appeal to this Court.

However, the Court need not even reach that decision because administrative exhaustion is not jurisdictional in this case. Once again, the government's argument is premised on a faulty assumption – that 7 U.S.C. §6912(e) requirement of administrative exhaustion is a bar to federal subject matter jurisdiction where the exhaustion requirement is not satisfied. However, the Ninth Circuit in McBride Cotton and Cattle Corp. v. Veneman, 290 F.3d 973 (9th Cir. 2002) held that that Section 6912(e) merely codifies the existing common law exhaustion requirement and does not implicate subject matter jurisdiction. Id. at 979 (distinguishing Basteck, relied upon by the government) and subsequently, the Eighth Circuit, reviewing all of the precedent, held that Section 6912(e) is not jurisdictional. Ace Property and Casualty Insurance Company v. Federal Crop Insurance Corp., 440 F.3d 992, 997-999 (8th Cir. 2006).[2] As the Eight Circuit stated in its recent Ace decision:

> After reviewing the cases and comparing Section 6912(e) to other statutes, we conclude that Section 6912(e) is nothing more than "a

[2] These two cases, representing the latest pronouncement by any of the Circuits are not even cited by the government.

> codified requirement of administrative exhaustion" and is not thus jurisdictional. Salfi, 422 U.S. at 757, 95 S.Ct. 2457; see, also, McBride, 290 F.3d at 980. Section 6012(e) was promulgated in 1994, almost 20 years after the Supreme Court's decision in Salfi distinguishing between jurisdiction and non-jurisdictional exhaustion. Had Congress intended to limit subject matter jurisdiction by Section 6912(e), it could have done so with explicit language as it has in other statutes. See, e.g., 8 U.S.C. §1252(d)(1). To now interpret Section 6912(e) as jurisdictional "would collapse the Supreme Court's distinction between jurisdictional prerequisites and mere codifications of administrative exhaustion requirements," Chellette, 229 F.3d at 687, and would counter to our prior interpretation of similar statutes such as the PLRA. Id. at 999.

None of the cases cited by the government post-date these two pronouncements by the Eighth and Ninth Circuits and there have been no decisions in the government's favor on this issue since 2002. It is now clear that the better analysis and direction of the courts is that the jurisdictional argument raised by the government is incorrect and that statutory exhaustion may be waived under grounds of futility or prudential exhaustion, discussed below. Notably, the government does not address either of these issues – probably because the government knows how inequitable its position is with respect to the exhaustion issue.

As this Court has held, the doctrine of prudential exhaustion acknowledges that administrative remedies need not be pursued if the litigant's interest in immediate judicial review outweighs the government's interest in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further. White and Case, LLP v. United States, 67 Fed. Cl. 164, 170 (Fed. Cl. 2005). The prudential exhaustion doctrine recognizes three broad circumstances which weigh against the plaintiff being required to exhaust his administrative remedies prior to bringing his case in court. First, the court may not require exhaustion of administrative remedies when exhaustion may prejudice

the plaintiff. White and Case, supra at 170 (and cases cited therein). Here, there are two obvious grounds of prejudice. First, the NRCS's own contracting officer represented that Rick's had the right to **either** pursue further administrative remedies or institute suit in this Court. To suggest that reliance on a contracting officer's decision and proposed options is taken at a contractor's peril is an astounding one. Such reliance was reasonable and the fact that administrative remedies are now time-barred constitutes prejudice as a matter of law. Secondly, this matter has gone on for over five years. The NRCS has known about the underlying lawsuit since 2001 and chose not to intervene or defend Rick's, which stood in the line of fire for the NRCS. Now that damages have been liquidated and the government's liability under the Spearin doctrine made a matter as to which the government is collaterally estopped from attacking, the government suggests that Rick's should wait another period of months or years even though Rick's business has been destroyed and it has incurred over a million dollars in damages. The NRCS should have intervened in the underlying action and undertaken the primary defense of the case from the start. The prudential exhaustion doctrine strongly militates toward a finding of exhaustion due to prejudice under these circumstances.

Secondly, the prudential exhaustion doctrine may be invoked where an administrative remedy is inadequate "because of some doubt as to whether the agency is empowered to grant effective relief." White and Case, supra, at 170-71 (and citations therein). Here, the NRCS already has denied Rick's claim on the basis that there is no money allocated to pay these damages nor liability under the Spearin doctrine. Given those facts, it is clear that the pursuit of administrative remedies would be nothing more than a worthless exercise and expense for Rick's, whose business already has been

destroyed. The doctrine of prudential exhaustion therefore applies on this second ground as well.

Finally, the administrative remedy may be inadequate where it can be shown that the administrative body is prejudiced or is otherwise predetermined the issue before it. White and Case, supra, at 171 (and cases cited therein). Nothing is more illuminating on this subject than the letter of the NRCS dated October 21, 2005 to Rick's attorneys. That letter (Exhibit "E" hereto) from a top NRCS official, strenuously argued that any negligence was on the part of Rick's and that the design was adequate. The NRCS absolutely refused to make corrections (although they did put together a rehabilitation plan subsequently) and cited to an absolute financial limitation upon NRCS for paying this claim. Clearly, the NRCS has prejudged this dispute (although contrary to the findings of the District Court in Reynolds) and again, any administrative appeal would clearly be futile.

Accordingly, under the aforementioned precedent, it is clear that to the extent any exhaustion requirement exists, it should be deemed satisfied under the doctrine of prudential exhaustion.

## IV. PLAINTIFF'S CLAIM FOR EQUITABLE INDEMNIFICATION IS BASED ON THE SPEARIN DOCTRINE WHICH IS A LONG ESTABLISHED CAUSE OF ACTION.

The government misinterprets the equitable indemnification claim, which is based wholly on the Spearin doctrine. As noted above, the government does not even cite to Spearin in its entire Brief. Rather, it mis-analyzed the claim as being one either for an implied in law contract as to which there is no jurisdiction or as a tort claim which does not fall within the Tucker Act. With all due respect to the government, it is clear that the

complaint alleges that the design specifications for Rick's facility were negligently prepared – something which already has been recognized as a matter of law by the Eastern District of Pennsylvania in the Rick's case and as to which the "rehabilitation plan" put together by the NRCS after injunctive relief was entered by the Pennsylvania District Court impliedly recognizes. Under Spearin and its progeny, when the government provides a contractor with design specifications such that the contractor is bound by contract to build according to the specifications, the contract carries an implied warranty that the specifications are free from design defects. United States v. Spearin, 248 U.S. 132, 136 (1918). Also, see, White v. Edsall Construction Company, 296 F.3d 1081, 1084 (Fed. Cir. 2002); Essex Electro Engineers, Inc. v. Dansig, 224 F. 3d 1283, 1289 (Fed. Cir. 2000); USA Petroleum Corp. v. United States, 821 F.2d 622, 624 (Fed. Cir. 1987). Under the Spearin doctrine, where the government breaches the implied warranty of satisfactory contractual performance resulting from adherence to specifications, the contractor is entitled to recover all costs which proximately flow from the breach. Franklin Pavkov Construction Company v. Roche, 279 F.3d 989, 994-95 (Fed. Cir. 2002) (and cases cited therein). This is an implied in fact contractual obligation – not an implied in law obligation which the government argues would deprive this Court of jurisdiction. See, e.g., Lopez v. AC&S, Inc., 858 F.2d 712, 716 (Fed. Cir. 1988) ("In the absence of allegation or showing of circumstances requiring a conclusion that at Spearin warranty was implied, the asserted warranty would be, if it had judicial approval, implied at law, not fact, and a Tucker Act court would lack jurisdiction to imply it."). Also, see, CP Squire Contractors, Inc. v. United States, 716 F.2d 865, 874 (Fed. Cir. 1983) (Nies, dissenting) a Spearin warranty is implied in fact, not law.

Accordingly, the Spearin warranty is one which is implied in fact, not law, and this Court plainly has jurisdiction to adjudicate Spearin claims. Moreover, when the Spearin warranty is violated, it creates a contractual obligation to pay for all damages which proximately flow from the breach. That is the nature of Count I of the Complaint and not only does this Court have jurisdiction to consider such a claim, it plainly states a claim upon which relief may be granted.

## V. CONCLUSION

For all of the reasons set forth herein, it is respectfully submitted that the government's motion should be denied in its entirety.

Respectfully submitted,

By: [signature]

David J. Taylor, Esquire
Spriggs & Hollingsworth
1350 I Street, N.W.
Ninth Floor
Washington, D.C. 20005
(202) 898-5800

Of Counsel:

Jeffrey A. Krawitz, Esquire
Jonathan J. Bart, Esquire
Silverman Bernheim & Vogel
Two Penn Center
Suite 910
Philadelphia, PA 19102
(215)569-0000
jkrawitz@sbvlaw.com
jbart@sbvlaw.com

**CERTIFICATE OF SERVICE**

DAVID J. TAYLOR, ESQUIRE, hereby certifies that he did cause a copy of Plaintiff's Response to Defendants Motion to Dismiss the Complaint for Lack of Subject Matter Jurisdiction and/or Failure to State a Claim Upon Which Relief May Be Granted to be served on the following parties as directed by the Notice of Electronic Filing:

Troy B. Mouer, Esquire
Office of the General Counsel
U.S. Department of Agriculture
P.O. Box 1134
Harrisburg, PA 17108

Joan M. Stentiford, Esquire
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L. St., N.W., 8th Floor
Washington, DC 20530

David J. Taylor, Esquire