No. 06-255 C
(Judge Christine O.C. Miller)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

RICK'S MUSHROOM SERVICE, INC.,

Plaintiff,
v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S REPLY

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KATHRYN A. BLEECKER
Assistant Director

JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street
Washington, D.C. 20530
Tele: (202) 616-0341
Fax: (202) 514-8624

December 4, 2006

Attorneys for Defendant

## TABLE OF CONTENTS

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. This Court Lacks Subject Matter Jurisdiction Over This Suit . . . . . . . . . . 1

A. The Contract Between Plaintiff and USDA Is Governed By The USDA Reformation Act Which Requires Exhaustion of Administrative Remedies and Judicial Review In United States District Courts, Not This Court . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B. The Contract Disputes Act Does Not Apply To Rick's Cost-Sharing Agreement With The U.S. Department of Agriculture . . . 3

II. The *Spearin* Doctrine Is Not A Basis for Establishing Subject Matter Jurisdiction In This Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III. Rick's Misrepresents The Findings of the United States District Court in Reynolds v. Rick's Mushroom Service . . . . . . . . . . . . . . . . . . . . . . 9

IV. The Doctrine of Prudential Exhaustion Provides No Basis For Establishing Jurisdiction In This Court Because Judicial Review Over Rick's Case Is Found Only In United States District Courts, Not This Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## TABLE OF AUTHORITIES

### CASES

Bailey v. United States,
46 Fed. Cl. 187 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Boggs & Associates, Inc. v. Roskens,
969 F.2d 1023 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Chevron v. United States,
71 Fed .Cl. 236 (2006)

Coastal Corp. v. United States,
713 F.2d 728 (Fed Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Die Casters Int'l, Inc. v. United States,
67 Fed. Cl. 362 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Doe v. United States,
37 Fed. Cl. 74 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Essex Electro Engineers, Inc. v. Danzig,
224 F.3d 1283 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Folden v. United States,
379 F.3d 1344 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Griswold v. United States,
61 Fed. Cl. 458 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Houston v. United States,
60 Fed. Cl. 507 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Institut Pasteur v. United States,
814 F.2d 624 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Lewis v. United States,
32 Fed. Cl. 59 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Luria Brothers & Co. v. United States,
369 F.2d 701,
177 Ct. 676 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

McBride Cotton and Cattle Corp. v. Veneman,
290 F.3d 973 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

McNutt v. General Motors Acceptance Corp. of Indiana,
298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

New Era Construction v. United States,
890 F.2d 1152 (Fed. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Poorvu v. United States,
420 F.2d 993 (Ct. Cl. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Reynolds v. Army & Air Force Exch. Serv.,
846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Reynolds v. Rick's Mushroom Service, Inc.,
Civ. A. No. 01-3773,
2004 WL 620164 (USDC E.D. Pa. March 29, 2004) . . . . . . . . . . . . . . . . 9, 10, 11

Schooling v. United States,
63 Fed. Cl. 204 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Trauma Service Group, Inc. v. United States,
33 Fed .Cl. 426 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

United States v. Mitchell,
463 U.S. 206 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Spearin,
248 U.S. 132 (1918) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9

Vereda, Ltda v. United States,
271 F.3d 1367 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

White & Case, LLP v. United States,
67 Fed. Cl. 164 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**STATUTES**

7 U.S.C. §§ 6901, 6962 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

7 U.S.C. § 6912(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 11, 12

7 U.S.C. § 6962(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

16 U.S.C. §§ 1003a, 1004,1006a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 12

16 U.S.C. § 1006(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

31 U.S.C. §§ 6301-08 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

41 U.S.C. § 602(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

41 U.S.C. § 602 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RICK'S MUSHROOM SERVICE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 06-255 C |
| v. | ) | (Judge Christine O.C. Miller) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY

The United States replies to plaintiff Rick's Mushroom Service, Inc.'s ("Rick's") opposition to the Government's motion to dismiss. The contract between Rick's and the United States Department of Agriculture Natural Resources Conservation Service ("NRCS") was a cooperative, cost-sharing agreement, entered into at Rick's request. No goods or services were procured by NRCS for the benefit of the Government under the terms of this contract. Rather, NRCS provided an environmentally sound design and paid one-half of the costs for Rick's to build itself a spent mushroom substrate ("SMS") facility, to be operated by Rick's as a private, commercial enterprise.

## ARGUMENT

### I. This Court Lacks Subject Matter Jurisdiction Over This Suit

Rick's bears the burden of establishing, by a preponderance of the evidence, that this Court possesses jurisdiction to entertain its claim. McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). Here, Rick's claims that this case falls within the ambit of the Contract Disputes Act, ("CDA"), 41 U.S.C. § 602 et seq., or, under general Tucker Act jurisdiction. 28 U.S.C. § 1491. Neither of these authorities applies to the facts and circumstances raised by Rick's complaint.

**A. The Contract Between Plaintiff and USDA Is Governed By The USDA Reformation Act Which Requires Exhaustion of Administrative Remedies and Judicial Review In United States District Courts, Not This Court**

This Court does not possess jurisdiction to entertain Rick's claim because judicial review of the claim lies in United States district courts, not this Court. As set forth at length in the Government's original motion, the cost-sharing agreement at issue here was signed under the authority of the Department of Agriculture Reorganization Act of 1994. 7 U.S.C. §§ 6901, 6962; 16 U.S.C. § 1006(a) (authorizing the Secretary of Agriculture to enter into cost-sharing agreements.) Title 7 provides for administrative review of disputes arising pursuant to its provisions and requires that the administrative appeal procedures be exhausted before a party may seek judicial review. Even then, judicial review is specifically limited to Federal district courts, not this Court. 7 U.S.C. § 6912(e).

Thus, all of Rick's arguments concerning the Tucker Act are inapposite. Plaintiff cannot rest on Tucker Act jurisdiction because there is a pre-emptive statutory scheme that deprives this Court of jurisdiction and confers it on the Federal district courts. Both the United States Court of Appeals for Federal Circuit as well as this court have recognized that where jurisdiction over a certain type of claim is statutorily provided exclusively to another forum, this Court does not possess jurisdiction and must dismiss the case. Folden v. United States, 379 F.3d 1344, 1356 (Fed. Cir. 2004); Vereda, Ltda v. United States, 271 F.3d 1367, 1375 (Fed. Cir. 2001); Chevron v. United States, 71 Fed .Cl. 236, 261 (2006), citing Schooling v. United States, 63 Fed. Cl. 204 (2004), and

Griswold v. United States, 61 Fed. Cl. 458 (2004).

### B. The Contract Disputes Act Does Not Apply To Rick's Cost-Sharing Agreement With The U.S. Department of Agriculture

The contract signed between Rick's and NRCS is a cost-sharing agreement for the primary benefit of Rick's, not a procurement contract for the Government. 31 U.S.C. § 6305; 16 U.S.C. § 1003a. Here, it is undisputed that the contract provided that Rick's agreed to participate in the NRCS cost-share program, and agreed inter alia, that:

> 1) it would operate its SMS facility in conformity with, and as shown in the attached plan/schedule of operations and according to the time schedule of conservation treatment and in accordance with the specifications and other special program criteria obtained from the local field office of the Natural Resources Conservation Service.
> 2) it would forfeit all rights to further payments or grants under the contract and refund the United States or the Conservation District, all payments or grants received in the event that Rick's is determined not to be in conformity with the standards.
> 3) If Rick's transfers its interest in the SMS facility, it forgoes all right to collect further payments unless the successor also agrees to participate in the cost share agreement.

Exhibit 1 to Amended Complaint.

It is apparent from this review of the contract terms, that the Government did not procure any goods or services by the terms of the contract. Rick's was not constructing its SMS facility at the request of, or for the benefit of, the Government, but rather for its own private commercial benefit, cooperating with the NRCS by participating in the NRCS cost share program by using NRCS's specifications to build the SMS facility.

Section 6305(1) of Title 31, United States Code, specifically provides that cooperative agreements shall be used when:

> the principal purpose of the relationship is to transfer a thing of value to the State, local government, or other recipient to carry out a public purpose of support or stimulation

> authorized by a law of the United States, instead of acquiring (by purchase, lease, or barter) property or services for the direct benefit or use of the United States Government.

31 U.S.C. § 6305(1) (emphasis added). This definition of cooperative agreements plainly demonstrates that they are distinct from procurement contracts, indeed, they are defined as being other than procurement contracts. By its terms, the CDA applies only to an express or implied contract entered into by an Executive agency for: (1) the procurement of property, other than real property in being; (2) the procurement of services, (3) the procurement of construction, alteration, repair or maintenance of real property; or (4) the disposal of personal property. 41 U.S.C. § 602(a). Thus, as a matter of law, the CDA does not apply to the cost-sharing agreement between Rick's and the USDA that is at issue here.

It is undisputed that the parties entered into a cooperative agreement which provided that if Rick's agrees to build its SMS facility according to the specifications provided by the Government, the Government would pay for one-half of the construction costs. See Exhibit A to Amended Complaint. As noted in the Government's main brief, the cost-sharing arrangement was provided by statute for the purpose of facilitating compliance with Federal environmental standards.

As authorized by statute, NRCS contracted with Rick's as a means of encouraging compliance with environmental statutes and protecting the environment. 31 U.S.C. § 6305 and 16 U.S.C. § 1003a. Rick's attempts to characterize this as a contract for the "procurement of services to advance NRCS policy." Plaintiff's Opposition at 13. As a matter of law, however, this is not a Government procurement purpose, but rather a proper use of the sovereign's authority to advance the public

welfare through responsible environmental policies.[1] 31 U.S.C. § 6305(1). Moreover, the NRCS did not "mandate" that Rick's construct an SMS facility, and Rick's operates as a private, commercial enterprise in an industry that raises unique environmental challenges. See Plaintiff's Opposition at 15. Rick's attempts to characterize itself as NRCS's "general contractor" as if it were constructing the SMS facility for the NRCS. Id. However, as is clear from a review of the contract terms, no part of the contract contemplates the transfer of any goods or services directly to the Government. See Exhibit A to Amended Complaint. The CDA applies only to contracts that are for the "direct procurement of goods or services by an executive agency of the government." Boggs & Associates, Inc. v. Roskens, 969 F.2d 1023, 1027 (Fed. Cir. 1992), citing New Era Construction v. United States, 890 F.2d 1152, 1157-58 (Fed. Cir. 1989).

The distinction between procurement contracts and cooperative agreements to further Government purposes was recognized by this Court in Bailey v. United States, 46 Fed. Cl. 187, 211 (2000), where this Court stated: "The alleged agreement appears to have been more of a collaborative effort between the government and Mr. Bailey to rapidly accomplish what was necessary to repatriate overseas property, rather than a standard procurement of goods and services subject to the CDA." Similarly, this Court has observed that in the Federal Grant and Cooperative Agreement Act, 31 U.S.C. §§ 6301-08, Congress created three categories of Federal agreements: procurement

---

[1] Arguably, in facilitating Rick's compliance with environmental statutes and NRCS's policies, the Government was acting as the sovereign to benefit the public welfare, which would provide another basis for excluding Rick's claim from both CDA and Tucker Act jurisdiction. Houston v. United States, 60 Fed. Cl. 507, 510-11 (2004), citing United States v. Mitchell, 463 U.S. 206, 212 (1983); Doe v. United States, 37 Fed. Cl. 74, 77 (1996).

contracts, cooperative agreements, and grants. Trauma Service Group, Inc. v. United States, 33 Fed .Cl. 426, 429 (1995). Only procurement contracts are meant to be governed by the CDA. Id.

The fact that the plaintiff in Trauma Service had a "Memorandum of Agreement" with the Government and Rick's has a document titled "contract" does not change this analysis. Id. First, it is not clear that the agreement between Rick's and NRCS meets the definition of "contract" even though it is labeled as such. Participation in NRCS's cost-sharing program was voluntary, and Rick's was free to withdraw at any time, provided that it re-paid whatever monies it had received from NRCS at that point, and gave up any claim to additional funds. Exhibit A to Amended Complaint.

Whether the cost-sharing agreement is deemed a contract or merely an agreement, is not dispositive of the Government's motion to dismiss, however, because even if the cost-sharing agreement is properly termed a contract, it is not automatically governed by the CDA[2]. It is well-settled that not all contracts with the Government are within the ambit of the CDA, only those that are for the procurement of goods and services for the benefit of the Government. 41 U.S.C. § 602; Coastal Corp. v. United

---

[2] Equally, merely calling an arrangement a "cost-sharing contract" does not, without more, put it beyond the reach of the CDA. Die Casters Int'l, Inc. v. United States, 67 Fed. Cl. 362 (2005), cited by Rick's, involved a cost-sharing contract with the Defense Nuclear Agency ("DNA") to privatize a Ukranian factory that formerly produced military items and convert it to the manufacture of consumer products. Id., at 365. Plaintiff there brought an action in this Court, successfully invoking jurisdiction pursuant to the CDA. Unlike the instant case, however, the contract in Die Casters was competitively bid, contained the FAR provisions relating to cost-sharing contracts, and procured Die Casters's capital, material, and services, at the request and direction of DNA. Id. at 364-365. By contrast here, Rick's agreement was not competitively bid, nor did it contain any language from the FAR, nor did NRCS procure any goods or services from Rick's. See Plaintiff's Opposition at 2 and Exhibit A to Amended Complaint.

States, 713 F.2d 728, 730 (Fed Cir. 1983). Here, the terms of Rick's contract with NRCS make it clear that the purpose of the contract is for the Government to provide design services and financial assistance in exchange for Rick's agreement to build its SMS facility according to the standards set out in NRCS's cost share programs. Exhibit A to Amended Complaint. In other words, the principal purpose of the relationship between Rick's and the NRCS was to transfer a thing of value, here money and design assistance, to Rick's in order to "carry out a public purpose of support or stimulation authorized by a law of the United States." Trauma Service, 33 Fed. Cl. at 430, citing 31 U.S.C. § 6305. Thus, the nature of Rick's contract is compliance with Federal environmental statutes, and not the acquisition of goods or services by the Government.

In the absence of a procurement purpose to the contract, Rick's cost-sharing agreement is not covered by the CDA, and the complaint should be dismissed. Coastal Corporation v. United States, 713 F.2d 728, 730 (Fed Cir. 1983) (limiting the scope of the CDA to express or implied contracts for the procurement of goods and services and for the disposal of personal property.); Institut Pasteur v. United States, 814 F.2d 624 (Fed. Cir. 1987) (holding that collaborative agreements are not procurement contracts and are therefore not covered by the CDA.).

## II. The *Spearin* Doctrine Is Not A Basis for Establishing Subject Matter Jurisdiction In This Court

As an initial matter, the Government notes that any claim arising out of the cost-sharing agreement between NRCS and Rick's is subject to the administrative exhaustion requirements of 7 U.S.C. § 6912(e), with judicial review available, if at all, in

a United States district court, not this Court. Id. Additionally, there is no need for the Court to analyze how or whether the so-called Spearin doctrine applies to Rick's case until it is determined that the Court possess jurisdiction over Rick's claims. Unless the Court determines that it possesses jurisdiction over this case either under the CDA or the Tucker Act, it need not and cannot consider anything further. It is beyond argument that United States v. Spearin, 248 U.S. 132, 136 (1918), and its progeny cannot serve as an independent basis for this Court's jurisdiction.

Prematureness notwithstanding, Rick's attempt to shoehorn its case to fit within the Spearin doctrine cannot succeed. The so-called Spearin doctrine protects a contractor who has contracted with the Government to construct a building according to design specifications provided by the Government. United States v. Spearin, 248 U.S. 132, 136 (1918). Under the Spearin doctrine,"when the Government orders a structure to be built, and in so doing prepares the specifications prescribing the character, dimension and location of the construction work, it implicitly warrants that if the specifications are complied with, satisfactory performance will result." Luria Brothers & Co. v. United States, 369 F.2d 701, 707-708, 177 Ct. Cl. 676, 687 (1966); Poorvu v. United States, 420 F.2d 993, 999 (Ct. Cl. 1970). If the Government's specifications prove to be defective, the Government is "deemed to breached the implied warranty that satisfactory contract performance will result from adherence to the specifications, and the contractor is entitled to recover all of the costs proximately flowing from the breach." Essex Electro Engineers, Inc. v. Danzig, 224 F.3d 1283, 1289 (Fed. Cir. 2000). (emphasis added) (citations omitted).

This doctrine is inapposite to Rick's contract in part because Rick's does not

seek costs "proximately flowing" from NRCS's purported breach of its implied warranty, and in part because Rick's was not "contractually obligated" to build its SMS facility according to the specifications provided by the NRCS. Rick's was not building the SMS facility for the Government, it had merely voluntarily agreed to participate in the NRCS cost-sharing program. Exhibit 1 to Amended Complaint. Under the terms of the agreement, Rick's agreed to build its SMS facility according to the standards set out by the NRCS, and the NRCS agreed to pay one-half the costs of the facility. Id. If Rick's did not build its facility in accordance with the specifications provided by NRCS, it could be terminated from the cost-share program whereupon it would forfeit all rights to future cost-share payments, and could be required to repay some or all of the past payments. Id. at Attachment A, sub-paragraph (g). NRCS had no authority under the contract to force Rick's to complete the SMS facility according to the Government's specifications.

Additionally, Rick's does not seek damages "proximately flowing" from the construction of its SMS facility; it seeks indemnification for harm caused to a third party by Rick's operation of the facility. This is beyond the scope of the contract damages that the Spearin line of cases provides. Nothing in the Spearin line of authority warrants Rick's reading of it as an insurance policy.

## III. Rick's Misrepresents The Findings of the United States District Court in Reynolds v. Rick's Mushroom Service

In 2001, Rick's was sued by its neighbors in the United States District Court for the Eastern District of Pennsylvania for violating the standards of the Clean Water Act and the Pennsylvania Clean Streams law. Amended Complaint at ¶ 13. Rick's claims that the Pennsylvania court held that the design specifications provided by the NRCS

for Rick's SMS facility were negligently prepared, but this is not true. Plaintiff's Opposition at 25. On March 29, 2004, the Pennsylvania court issued its Findings of Fact and Conclusions of Law, which did not find that the NRCS's specifications were negligently prepared, but did find numerous ways in which Rick's failed to operate or maintain its facility in an environmentally responsible manner. Reynolds v. Rick's Mushroom Service, Inc., Civ. A. No. 01-3773, 2004 WL 620164 (USDC E.D. Pa. March 29, 2004). For example, the Pennsylvania court made the following specific findings of fact:

> 17.
> (a) Rick's does not store SMS on a pad made of 'concrete, asphalt, or low permeability, compacted, earthen material capable of containing all solids and collecting and diverting all wastewater.'
> (b) Rick's has not verified that SMS 'is stored on soil separated at least 20 inches above the seasonal high water table during all periods of the year.
>
> * * *
>
> (d) Rick's does not have a groundwater monitoring system, and it has not monitored the quality of groundwater under its facility.
> (e) Rick's does not know whether it stores SMS in excess of permissible volumes.
>
> * * *
>
> (g) Rick's does not measure or monitor accurately the volume of leachate applied to the sprayfields because it does not presently have rain gauges in the sprayfields.
>
> * * *
>
> (h) Rick's has not maintained the earthen berm to ensure it is impermeable.
>
> * * *
>
> (i) Rick's does not apply leachate to the sprayfields in a manner that prevents discharge of leachate off-site and into Trout Run. Rick's does not ensure that the vegetation in the sprayfields is capable of absorbing the volume of nutrients applied. Rick's improperly operates its spray irrigation system outside the growing season and when the ground is frozen, saturated, or otherwise incapable of absorbing leachate. . .

Reynolds, 2004 WL 620164 *3-4.

Based on this list, it is apparent that Rick's operation and maintenance of its SMS

facility caused the damage for which Rick's now seeks indemnification, not the purportedly defective specifications provided by the NRCS. Thus, Rick's has completely misrepresented the Pennsylvania court's rulings with respect to the SMS facility, which provide no support for Rick's claim that NRCS's specifications were defective, even if this Court possessed jurisdiction to consider this claim.

## IV. The Doctrine of Prudential Exhaustion Provides No Basis For Establishing Jurisdiction In This Court Because Judicial Review Over Rick's Case Is Found Only In United States District Courts, Not This Court

Even if Rick's could establish that the doctrine of prudential exhaustion applied here, it would not provide a basis for jurisdiction in this Court, because judicial review of claims arising from agreements with the Secretary of Agriculture, including the NRCS, lies only in the United States district courts, not this Court. 7 U.S.C. § 6912(e).

Even if this were not the case, the doctrine of prudential exhaustion does not apply here because exhaustion is required under the applicable statutes, and it may not be excused. 7 U.S.C. § 6912(e). The doctrine of prudential exhaustion applies only where the statute setting out an administrative remedy does not, by its terms, explicitly mandate exhaustion of remedies as a prerequisite to suit. White & Case, LLP v. United States, 67 Fed. Cl. 164, 169 (2005), citing Lewis v. United States, 32 Fed. Cl. 59, 65 (1994). Furthermore, this case involves plaintiff's compliance with the technical aspects of its cost-sharing agreement and plaintiff's failure to meet the requirements of various environmental statutes. These subjects involve principles of agricultural law, administration of which is the province of the Department of Agriculture. Therefore, it makes sense to require plaintiff to bring its claim to the agency with the experience and expertise to evaluate the claim which is technical and uniquely related to subject matter

given to the agency's judgment. 7 U.S.C. §§ 6912(e), 6962(b); 16 U.S.C. §§ 1003a, 1004,1006a.

None of the factors that might otherwise support invocation of prudential exhaustion apply here. Rick's has given the Court no reason to conclude that it would have been futile for plaintiff to have sought administrative review of its claim from the agency. Nor does this case involve a constitutional due process claim, that the agency would not have authority to resolve. McBride Cotton and Cattle Corp. v. Veneman, 290 F.3d 973, 982 (9th Cir. 2002). Rather, it involves plaintiff's claim that it was the purportedly defective design of the SMS facility, and not plaintiff's complete failure to operate the facility within the prescribed limits, that resulted in environmental damage. Analyzing environmental wrongs under Federal conservation and environmental statutes is an area specifically delegated to the Department of Agriculture. 7 U.S.C. § 6962. Plaintiff cannot seriously argue that the agency lacked either authority or expertise to analyze its claim. Moreover, even the Ninth Circuit recognized that exhaustion of administrative remedies should be required unless there is a colorable constitutional claim at issue. McBride Cotton, 290 F.3d at 980.

## CONCLUSION

For the foregoing reasons, and those provided in the Government's moving brief, the Court should grant the Government's motion to dismiss this case for lack of subject matter jurisdiction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/
KATHRYN A. BLEECKER
Assistant Director

/s/ Joan M. Stentiford
JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street
Washington, D.C. 20530
Tele: (202) 616-0341
Fax: (202) 514-8624

December 4, 2006

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this _4_th day of December, 2006, I caused to be delivered copies of the foregoing “DEFENDANT’S REPLY BRIEF”, was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

___/s/ Joan M. Stentiford_____

+ JOAN M. STENTIFORD