# EXHIBIT
# "G"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REYNOLDS, ET AL, | . | CIVIL ACTION |
| Plaintiff, | . | |
| v. | . | No. 01-CV-3773 |
| RICK'S MUSHROOM SERVICE, ET AL, | . | TRIAL |
| Defendant. | . | FEBRUARY 18, 2004 |

. . . . . . . . . . . . . . . . .

Philadelphia, Pennsylvania

\- - - - -

BEFORE THE HONORABLE CYNTHIA M. RUFE
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff: PHILIP M. BRICKNELL, ESQ.
CHRISTOPHER R. NESTOR, ESQ.
JOHN P. KRILL, JR., ESQ.
Kirkpatrick & Lockhart LLP
Payne Shoemaker Building
240 North Third Street
Harrisburg, PA 17101-1507

For the Defendant: JONATHAN J. BART, ESQ.
JEFFREY A. KRAWITZ, ESQ.
Silverman Bernheim & Vogel
Two Penn Center Plaza, Suite 910
Philadelphia, PA 19102

Audio Operator: Erica Pratt

Transcriber: DIANA DOMAN TRANSCRIBING
P. O. Box 129
Gibbsboro, NJ 08026-0129

Telephone: (856) 435-7172
Fax: (856) 435-7124
E-mail: doman5123@snip.net

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

<u>I N D E X</u>

Q Now, you said that you gave advice to Mr. Masha at some point, in dealing with him as your client. What advice did you give him?

A Specific advice?

Q Yes.

A The latest on -- it was a document -- it's correspondence with some issues dealing with this DEP permit, here are some options he needed to look into. And it was up to him to decide what he was going to do.

Q And earlier on, when you first got involved with designing the facility, what advice did you give Mr. Masha?

A My advice was, here are some options as to how this particular facility could be formulated into an approvable design that would meet our criteria.

Q Now, you also said that you made it clear to him that there were boundaries on your advice. What are those boundaries?

A Boundaries are, you know, I represent NRCS and our mission and our goals and we have a client relationship as for the contract, but beyond that, you know, I work for NRCS.

Q And so, does that mean that Mr. Masha shouldn't be relying on you the way you rely on an engineer or a consultant that he retained privately?

A I would caveat that answer to the fact that, when it comes to dealing with issues related to the items that we had cost

shared on and were involved in, he's responsible for O&M. We have a contact there, so yes, he should ask us on those particular items. He should talk to us about what he's going to do.

Q Now, you referred to the storm in September of 2003 and how many inches of rain did you say fell?

A I don't have that information in front of me. I am sure it's plus eight inches. That's all I know.

Q Plus eight inches. Now, the impoundment lagoon that you designed has the capacity to hold more than eight inches of rainfall, doesn't it? From the a 3.2-acre drainage area.

A Capacity of the impoundment and rainfall timing and time of year, all those factors play into the situation as to whether it would have capacity for that or not. Obviously, if it was stone empty, it should have capacity for that. Definitely.

Q In fact, it should have plenty of capacity for it, shouldn't it?

A I am not going to -- plenty doesn't mean anything.

Q All right. You have your calculator, don't you? At the witness stand.

A Yes.

Q Yeah. And you used it earlier. Let me ask you if you can just do a quick calculation to determine how much of the impoundment lagoon would be filled up by an eight-inch rain

event.

MR. BART: Objection, Your Honor. The testimony was eight-plus inches. I mean, if he wants to use the numbers we had the other day on the rain gauge, which was eleven inches, that's something that at least we could do as an exercise. Although why he's doing it with this witness, I don't understand. But to say, get eight-plus and then ask him to do a calculation with eight is, you know, I think improper.

THE COURT: Well, it is cross-examination and you don't have to agree with what he's doing. But I would like to know, with all the variables I've heard, what his calculation could possibly be.

MR. KRILL: Yes.

By MR. KRILL:

Q Perhaps, Mr. Vanderstappen, you can at least do one run through for us, so that counsel and the Court can see how one does that kind of calculation. Now, you said that you designed a 3.2-acre drainage area for water to drain in from the SMS storage area, right?

A Correct.

Q All right. Now, let's take a nine-inch rain, just as an example. Is it true that you would, on your calculator let's say, take nine inches times 3.2 acres times 43,560 --

A Do you want --

Q -- square feet in an acre. You are aware of that, aren't

you?

A Yeah. I would take nine inches, divide it by twelve, to give me .75 feet.

Q Okay. Now, let's -- we can do it your way, too, but now I'd appreciate it if you would explain it. You take nine inches and you divide by twelve. Why do you divide by twelve?

A Nine inches times -- divided by twelve gives you feet.

Q Okay. And then you multiply by what?

A Times -- you go 3.2 acres.

Q Right. Times -- and then times what? 43,560?

A Times 43,560 cubic feet per acre.

Q Square feet per acre?

A Cubic feet per acre.

Q Cubic feet. Yes. And then what?

A That's 78,408 cubic feet that I'd multiply by, well, 7.5 or 7.48, whichever way. That's 7.5 gallons per cubic foot. 7.48. Gives me 586,000 gallons.

Q Okay. And the impoundment lagoon was designed to have a capacity of approximately 1.4 million gallons? Is that right?

A Yes. And there was something submitted at one point in time that showed a staged storage curve showing all these items listed on there, as to what the capacity was.

Q Mr. Vanderstappen, I am handing you a document marked as Plaintiffs' Exhibit 85. Can you identify that?

A Yes, this is a representation, a reduced copy of the