IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RICK'S MUSHROOM SERVICE, INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-255C<br>(Judge Christine O.C. Miller) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM**
**IN SUPPORT OF MOTION TO DISMISS**

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KATHRYN A. BLEECKER
Assistant Director

JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L St., N.W., 8th floor
Washington, D.C. 20530
Tel: (202) 616-0341
Fax: (202) 514-8624
E-mail: joan.stentiford-ulmer@usdoj.gov

Attorneys for Defendant

OF COUNSEL:

TROY B. MOUER
Attorney
Office of the General Counsel
U.S. Department of Agriculture
P.O. Box 1134
Harrisburg, Pennsylvania 17108

January 19, 2007

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. Rick's Has The Burden Of Establishing Subject Matter Jurisdiction Over The Cost-Sharing Agreement . . . . . . . . . . . . . . . . . . . . 2

II. Rick's Concedes That Its Agreement Was Signed Under Authority Of The Watershed Protection And Flood Prevention Act, Thus, It Is Subject To USDA's Administrative Appeal Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. The Cost-Sharing Agreement Is Not A Procurement Contract And Therefore Is Not Exempt From The USDA Administrative Appeal Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A. Advancing The Public Purpose Of A Government Agency Is Not A Procurement Function . . . . . . . . . . . . . . . . . . . . . 5

B. The Cost-Sharing Agreement Is A Cooperative Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV. Rick's Improperly Attaches Depositions From A Prior Proceeding In Which The Government Was Not A Party . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## TABLE OF AUTHORITIES

### CASES

Bruhn v. United States, 2006 WL 3690633 (Fed. Cl.) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Dynaelectron Corp. v. United States,
4 Cl. Ct. 424, aff'd. mem.,
758 F.2d 665 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Farmers & Merchants Bank of Eatonton, Georgia v. United States,
43 Fed. Cl. 38 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

Hamlet v. United States,
63 F.3d 1097 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

McNutt v. General Motors Acceptance Corp.,
298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

### STATUTES

7 U.S.C. § 6912(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

7 U.S.C. § 6962 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7 U.S.C. § 6991-6999 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,9

7 U.S.C. § 6991(2)(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7 U.S.C. § 6999 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

16 U.S.C. § 1001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

16 U.S.C.§1003(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,3,8

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

31 U.S.C. § 6303(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

31 U.S.C. § 6304 . . . . . . . . . . 7

31 U.S.C. § 6305(1) . . . . . . . . . . 1,6

7 C.F.R. § 400.169 . . . . . . . . . . 9

7 C.F.R. § 614.1 . . . . . . . . . . 4, 9

7 C.F.R. § 614.3 . . . . . . . . . . 9

7 C.F.R. § 614.4(c) . . . . . . . . . . 4

7 C.F.R. § 614.3(a)(2)(v) . . . . . . . . . . 4

7 C.F.R. § 614.17 . . . . . . . . . . 4

7 C.F.R. §622.2 . . . . . . . . . . 7

The Watershed Protection and Flood Prevention Act,
Pub. L. 83-566 . . . . . . . . . . 3, 5

**RULES**

Rules of Court of Federal Claims, Rule 32 . . . . . . . . . . 9

Federal Rules of Evidence 801 . . . . . . . . . . 10

Federal Rules of Evidence 804(d) . . . . . . . . . . 10

**OTHER REFERENCES**

Natural Resource Conservation Service Handbook, Title 120
Part 600.2 . . . . . . . . . . 8

Natural Resource Conservation Service General Manual
Title 120, Part 404 . . . . . . . . . . 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RICK'S MUSHROOM SERVICE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | No. 06-255 C |
| v. | ) | (Judge Christine O.C. Miller) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS

At the hearing before this Court on the Government's Motion To Dismiss that was held on December 8, 2006, the Court requested additional briefing in this case. The Court requested the parties to address whether the Long-Term Cost Contract For NRCS Cost Share Programs ("cost-sharing agreement") between plaintiff, Rick's Mushroom Service ("Rick's"), and the Natural Resources Conservation Service ("NRCS"), an agency of the United States Department of Agriculture ("USDA"), was the type of claim that was required to be appealed through the NRCS's administrative appeal procedures, and whether it constituted a "cooperative agreement" within the meaning of 31 U.S.C. § 6305(1).

ARGUMENT

It is undisputed that the cost-share agreement arose under 16 U.S.C. §§ 1003(6), 1003a. Plaintiff's Brief ("Pl. Br.") 1-2. Thus, it falls within the ambit of the administrative appeal procedures that must be exhausted before obtaining judicial review, and more importantly, that provide judicial review exclusively in United States district courts. 7 U.S.C. §§ 6912(e), 6999.

Moreover, the cost-sharing agreement does not involve the procurement of goods and services for the direct benefit of the Government, and, therefore jurisdiction cannot be found under the Contract Disputes Act ("CDA"). Plaintiff's argument that the NRCS was "procuring" the advancement of the NRCS's mission, i.e., compliance with environmental statutes, through the cost-share agreement with Rick's, is wholly unsupported by any law or statute, or common sense.

Finally, there can be no Tucker Act jurisdiction in this Court both because judicial review of agreements reached under NRCS's cost-share program is statutorily reserved to Federal district courts, and because the claims Rick's asserts in the amended complaint sound in tort, which is beyond the Court's authority under the Tucker Act.

## I. Rick's Has The Burden of Establishing Subject Matter Jurisdiction Over This Cost-Sharing Agreement

Rick's, as the plaintiff in this case, has the burden of establishing that this Court possesses jurisdiction in this case. Farmers & Merchants Bank of Eatonton, Georgia v. United States, 43 Fed. Cl. 38, 39 (1999) citing McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936) (other citations omitted). This Court's jurisdiction is limited by the extent to which the United States has waived its sovereign immunity. United States v. Testan, 424 U.S. 392 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941); Dynaelectron Corp. v. United States, 4 Cl. Ct. 424, 428, aff'd. mem., 758 F.2d 665 (Fed. Cir. 1984). Thus, Rick's complaint that the Government has been unable to cite any case that precludes CDA jurisdiction misses the point. It is Rick's burden to cite authority that supports a finding of CDA jurisdiction, and Rick's that must establish that this case fits within some explicit grant of jurisdiction to this Court in

order to avoid dismissal. The Government is not required to establish that the Court does not possess jurisdiction.[1]

## II. Rick's Concedes That Its Agreement Was Signed Under Authority of The Watershed Protection And Flood Prevention Act, Thus, It Is Subject To USDA's Administrative Appeal Procedures

Rick's concedes that its agreement with the NRCS was signed under the authority of 16 U.S.C. § 1003(6)[2], as part of an NRCS cooperative agreement with the local conservation district, the Chester County Conservation District ("CCCD"). Pl. Br. 1-2. It is undisputed that the NRCS-CCCD cooperative agreement was signed under the authority of 16 U.S.C. §§ 1001, 1003, to protect the Red and White Clay Creek Watershed. Pl. Br. 2-4, and Pl. Exhibit B. It is further undisputed that the cost-sharing agreement between Rick's and NRCS was an outgrowth of the NRCS-CCCD cooperative agreement. Pl. Br. 6-7.

As the Government established in our motion to dismiss the amended complaint, administrative decisions relating to an NRCS program authorized by the Watershed Protection and Flood Prevention Program are subject to the administrative appeal

[1] Additionally, for purposes of a motion to dismiss, the Court is obligated to treat all jurisdictional facts as true, not all facts alleged by the plaintiff as true. Bruhn v. United States, 2006 WL 3690633 (Fed.Cl.), citing Hamlet v. United States, 873 F.2d 1414, 1416 (Fed. Cir. 1989)(holding that only unchallenged facts are deemed to be correct and true for purposes of a motion to dismiss pursuant to RCFC 12(b)(1)). Thus, plaintiff's statement that "the facility was completely designed, soup to nuts, by the NRCS engineer," Pl. Br. 7, it is not a jurisdictional fact – rather it goes to the substance of Rick's claim of purportedly defective specifications. And contrary to Rick's characterization as an undisputed fact, the Government does in fact dispute that NRCS designed Rick's entire facility. That fact is not, however, properly before the Court at this time, because it does not speak to the procurement function of the contract.

[2] For reasons not explained, Rick's cites to Public Law 83-566, rather than to the United States Code. Public Law 83-566 was codified at 16 U.S.C. §§ 1001-1012.

process provided through the National Appeals Division ("NAD") of USDA. 7 U.S.C. §§ 6991-6999; 7 C.F.R. §§ 614.1, 614.3(a)(2)(v). The NRCS is specifically listed as an agency within the authority of the NAD. 7 U.S.C. § 6991(2)(f). Furthermore, NRCS regulations further provide that "A participant must receive a final determination from NAD pursuant to 7 C.F.R. part 11 prior to seeking judicial review." 7 C.F.R. § 614.17. It is undisputed that Rick's cost-sharing agreement was part of the NRCS's local conservation program operated cooperatively with the CCCD. Pl. Br. 7-8; Declaration of Peter Vanderstappen ("Vanderstappen Decl.") ¶¶ 2-5.[3] Additionally, this Court has previously held that the USDA administrative appeals process is mandatory for disputes arising from agency decisions. Farmers & Merchants Bank, 43 Fed. Cl. 38, 40 (1999).

There can be no question, therefore, that Rick's cost-sharing agreement with the NRCS is subject to the USDA administrative appeal scheme, including the provision governing judicial review. 7 U.S.C. §§ 6912(e), 6991-6999; 7 C.F.R. §§ 614.1, 614.3. Judicial review of USDA administrative claims is statutorily reserved to United States district courts. 7 U.S.C. § 6999; Farmers & Merchants Bank, 43 Fed .Cl. 43-44. Thus, even if Rick's could somehow satisfy the administrative exhaustion requirement, this Court would still not possess jurisdiction over the case.

Disputes involving procurement contracts that would be appealable to the Department of Agriculture Board of Contract Appeals are exempt from the NAD appeal requirements. 7 C.F.R. § 614.4(c). For the reasons established below, Rick's cost-

[3]A copy of Mr. Vanderstappen's declaration is attached to this supplemental memorandum.

sharing agreement is not a procurement contract, therefore this exception provides no basis for jurisdiction in this Court.

III. The Cost-Sharing Agreement Is Not A Procurement Contract And Therefore Is Not Exempt From The USDA Administrative Appeal Requirements

Procurement contracts are defined as those where "the principal purpose of the instrument is to acquire (by purchase, lease, or barter) property or services for the direct benefit or use of the United States Government." 31 U.S.C. § 6303 (1). Here, under the terms of the cost-sharing agreement, the Government agreed to provide technical and design assistance to Rick's in constructing an SMS facility. In exchange for Rick's agreement to follow the Government's assistance, the Government agreed to pay two-thirds of the cost of construction. The agreement did not provide for transfer of any ownership interest to the Government, nor was the Government entitled to share in any profits that might be generated from the business after the structures were completed. The Government procured nothing, it merely provided design and technical assistance to benefit Rick's in hopes of avoiding adverse environmental consequences.

A. Advancing the Public Purpose Of A Government Agency Is Not A Procurement Function

Rick's argues that the cost-sharing agreement was a procurement contract because it was "designed to procure what it is that the NRCS does – i.e. design, construct and build environmental treatment facilities to comply with the legislative mandate of the Watershed Protection and Flood Protection Act." Pl. Br. 8. Furthering the goals of a Government agency cannot, by itself, be a procurement function. Presumably all agreements reached by an agency have the purpose of furthering that agency's mission or purpose. For an agency to take action or enter an agreement that

was at odds with its purpose would be to exceed its administrative authority, and could be potentially unlawful. Moreover, Rick's argument proves too much. The agreement identified by Rick's between NRCS and Chester County Conservation District as a cooperative agreement also has the purpose of advancing the NRCS's mission as an agency. Pl. Br. 2-3. Yet, Rick's agrees that that agreement is a cooperative agreement within the meaning of 31 § U.S.C. 6305(1); Pl. Br. 2, 6. Such agreements are, by definition, not procurement contracts, and are in furtherance of the public purpose of a given agency. Id. Lacking any procurement purpose, the cost-sharing agreement can neither be exempted from the USDA administrative appeal process, nor provide a basis for jurisdiction under the Contract Dispute Act.

B. The Cost-Share Agreement Is A Cooperative Agreement

Cooperative agreements are defined as having the "principal purpose [ ] to transfer a thing of value to the State, local government, or other recipient to carry out a public purpose of support or stimulation authorized by a law of the United States instead of acquiring (by purchase, lease or barter) property or services for the direct benefit or use of the United States Government." 31 U.S.C. § 6305(1). Here, Rick's acknowledges that the cost-sharing agreement was intended to carry out a public purpose, i.e., compliance with Federal and state environmental laws, and protection of the local watershed. Pl. Br. 8.

Equally, there can be no doubt that "substantial involvement" of the Government was anticipated under the cost-sharing agreement. The agreement is titled "Long-Term Contract for NRCS Cost Share Programs." Exhibit A to Amended Complaint. Additionally, the NRCS expected that agreements such as this would take from three to

five years to complete, and would involve numerous visits to the landowner's site, and numerous consultations with the landowner during the process of developing and implementing a plan.[4] Vanderstappen Decl., ¶¶ 8, 12, 13, 15.

Moreover, participation in the cost-share program is completely voluntary on the part of Rick's or any other landowner. Vanderstappen Decl. ¶¶ 10, 11, 14. The NRCS is not a regulatory agency, and has no enforcement authority. 7 U.S.C. § 6962; 7 C.F.R. § 622.2. It offers private businesses assistance in developing environmental practices for facilities such as Rick's, that are operated in environmentally sensitive industries, but only at the request of the individual or business, and with no representation that the NRCS has any regulatory authority to enforce any part of its proposed plan for Rick's SMS facility. Vanderstappen Decl. ¶11. Thus, despite Rick's characterization to the contrary, it could not be and was not "required" to follow all of the NRCS's specifications and suggestions. Rick's sought and requested the benefit of the cost-sharing program to construct an SMS facility for Rick's use in its private, commercial, for-profit enterprise. It was not providing any service to the Government.

The fact that the NRCS may have had a cooperative agreement with the CCCD, in no way precludes the existence of a cooperative agreement between the NRCS and Rick's. The Watershed Protection and Flood Prevention Act gives the NRCS the additional authority to enter into agreements with individual "landowners, operators, and occupiers. . . based on conservation plans of such landowners, operators, and

---

[4]Alternatively, the cost-sharing agreement could be seen as a grant agreement. 31 U.S.C. § 6504. Grant agreements are differentiated from procurement contracts in the same way as cooperative agreements, but do not anticipate substantial involvement of the Government after the money is provided. Id.

occupiers which are developed in cooperation with and approved by the soil and water conservation district in which the land described in the agreement is situated. . . ." 16 U.S.C. § 1003(6). This is the provenance of the agreement between Rick's and the NRCS: a long-term, cost-sharing, cooperative agreement between the parties.

Additionally, the Handbook of the NRCS specifies that a cooperative agreement is to be used to reflect an assistance relationship between NRCS and a State or local government, or other recipient. Handbook, Title 120, Part 600, § 600.2(D).[5] Similarly, the NRSC General Manual sets out the policy and procedures to be used by the NRCS for installation, through the use of long term contracts with individual participants where, as here, long term contracts are authorized. NRCS General Manual, § 404.4.[6]

The long term cooperative agreement for cost-sharing assistance between NRCS and Rick's was based on an approved plan to solve identified problems on Rick's land, which is a pre-requisite for financial assistance. NRCS General Manual, Title 120 §§ 404.25, 404.40. Thus, contrary to Rick's assertion that the NRCS "went out looking for facilities to build," Pl. Br. 7, the long term contract resulted from: (1) Rick's "Request for Assistance Form" in which existing, identifiable problems and conservation needs were specified by Rick's; and (2) Rick's specified interest in "Waste Management Systems" and "Cropland Erosion Control." The plan for Rick's SMS facility was not developed without Rick's active participation. NRCS General Manual Title 120 §

[5] A copy of this section is attached as Exhibit 1-1 to 1-4. The entire NRCS Handbook is available at http://policy.nrcs.usda.gov/scripts/.

[6] A copy of the relevant portions of the General Manual are attached as Ex. 2-1 to 2-10. The NRCS General Manual is available at http://policy.nrcs.usda.gov/scripts/.

404.20. Moreover, in Part II, "Terms and Conditions," the agreement calls for Rick's to carry out the conservation practices specified in the plan designed for its property. Exhibit A to Amended Complaint. As these facts demonstrate, there was no procurement aspect to this contract – it was instead, a cooperative agreement between the NRCS and Rick's, authorized and managed under the authority of the Watershed Protection and Flood Prevention Act, and subject to the USDA administrative appeal procedures. 16 U.S.C. § 1003(6); 7 U.S.C. §§ 6991-6999; 7 C.F.R. §§ 614.1, 614.3.

## IV. Rick's Improperly Attaches Depositions From A Prior Proceeding In Which The Government Was Not A Party

In addition to the deposition of Peter Vanderstappen, that was requested by the Court, Rick's attached transcripts from the depositions of two other witnesses, Daniel Greig, Jesse Davis, and of Mr. Vanderstappen, that were taken in Reynolds v. Rick's Mushroom Service, Inc., Civ. No. 01-CV-3773 (United States District Court, Eastern District of Pennsylvania). The Pennsylvania litigation was brought by Rick's neighbors, Warren and John Reynolds, who alleged that runoff from Rick's property caused environmental damage to their property. The case resulted in a settlement agreement between the parties. Complaint ¶ 15.

Although Rick's attempted to blame the Government for the damage it caused, neither the United States Department of Agriculture, or the Natural Resources Conservation Service was ever made a party to that lawsuit. Thus, the Government had neither the opportunity nor the motivation to attend either of the depositions from which Rick's has attached transcripts. Therefore, the deposition transcripts are not admissible under any aspect of RCFC 32.

Additionally, Rick's has made no showing that either of the witnesses whose depositions it now relies on are currently unavailable as witnesses. Thus, the transcripts constitute hearsay not fitting any exception. Federal Rules of Evidence 801, 804(d). These transcripts should be stricken from the record, and should neither be admitted as evidence in this case, nor should the Court take judicial notice of them.

The Court should also strike the excerpted trial testimony of Peter Vanderstappen on the ground that it does not deal with jurisdictional facts, and therefore can have no relevance to the motion to dismiss.

CONCLUSION

For these reasons, and those provided in our motion to dismiss the amended complaint, and our reply brief, we respectfully request that the Court dismiss the amended complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

/s/ Joan M. Stentiford
JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification Unit - 8th Fl.
1100 L Street
Washington, D.C. 20530
Tele: (202) 616-0341
Facsimile: (202) 514=8624
Attorneys for Defendant

January 19, 2007

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this _19__th day of January, 2007, I caused to be delivered copies of the foregoing "SUPPLEMENTAL BRIEF IN SUPPORT OF GOVERNMENT'S MOTION TO DISMISS", was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

___/s/ Joan M. Stentiford_____
JOAN M. STENTIFORD