IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| RICK'S MUSHROOM SERVICE, INC., Plaintiff, v. THE UNITED STATES, Defendant. | No. 06-255C (Judge Christine O.C. Miller) |

DECLARATION OF PETER JOHN VANDERSTAPPEN

I, Peter John Vanderstappen hereby state as follows:

1. I am over the age of 18 and have personal knowledge of the matters set forth herein and if called as a witness could competently testify hereto.

2. I am an agricultural engineer at the Lebanon Technical Center in Lebanon, Pennsylvania, a position I have held since 1992. I am also a Registered Professional Engineer in Pennsylvania, and have worked for the Natural Resources Conservation Service and the Soil Conservation Service for over 28 years.

3. As part of my duties as an agricultural engineer with the NRCS, I was involved with the Red and White Clay Watershed Protection Plan (Plan), which was sponsored in part by the Chester County Conservation District (CCCD), as a way of addressing issues of environmentally sensitive runoff in the Red and White Clay Watershed.

4. To my knowledge, the NRCS was involved in developing the Plan and in obtaining approval from the United States Department of Agriculture (USDA) in

Washington, D.C. USDA also provided funding to NRCS in Pennsylvania some of which was allocated to the Red and White Clay Watershed Protection Plan. NRCS can then pay this money to local landowners who have requested technical advice and support from the NRCS through a cost-sharing agreement.

5. I first became involved with the cost-sharing agreement for Rick's Mushroom Service in 1997, when the business was called Custom Casing and was owned by someone else. When Rick's took over the business, NRCS transferred the contract from Custom Casing to Rick's.

6. Custom Casing requested technical assistance from the Red and White Clay Program for help in building a spent mushroom substrate facility. I was assigned to work on it, and visited the Custom Casing site, which later became the Rick's Mushroom Service site, two or three times to come up with a final plan for various conservation practices and Best Management Practices.

7. I discussed various options with Custom Casing to come up with the final plan for that site. The final plan listed several practices that would have to be installed to accomplish the plan. The plan would also show the times and dates that it was anticipated the various practices could be put in place.

8. I am familiar with the Long-Term Contract for NRCS Cost Share Programs that was in effect between Custom Casing and then transferred to Rick's Mushroom Service. The contract provided a period of three to five years to implement the practices that the parties thought necessary to avoid a negative environmental consequence to the watershed. Among other things, this allowed the landowner, Rick's Mushroom Service to estimate the cost of the practices and plan

the company's finances to meet them.

9. Rick's Mushroom Service was not committed to going to the final design of a containment facility for the spent mushroom substrate, so we took several preliminary steps with the idea that they would eventually lead to the completion of the final design.

10. The objective of the NRCS is to get the landowner to the point of establishing practices that will contain the runoff that the property generates and properly dispose of/utilize it. But, the NRCS cannot require a landowner to do anything B the landowner volunteers to work with us, and even after we come up with a plan, we cannot force the landowner to implement it immediately.

11. Under the cost-sharing program, the NRCS works with landowners to generate the Best Management Practices for their particular site. But the NRCS does not have any regulatory authority to require the landowner to take any particular step. Regulatory authority resides with the local county conservation district, PA Department of Environmental Protection and the U.S. Environmental Protection Agency. The NRCS provides technical support for the landowner. As long as the landowner is willing to work with us to meet the specifications, we can usually accomplish that.

12. If we cannot reach agreement with a landowner about a final plan, we will develop additional options, but if there is still no agreement, we will part ways. Because it is a voluntary program, landowners can choose not to participate and not to use our plan. Landowners can also choose to implement only part of the plan we provide and complete the rest of it at some later point.

13. In the case of Rick's Mushroom Service, the landowner, Rick Masha, did not want to implement everything right away, and this resulted in our using temporary measures such as a sediment basin until the landowner decided to proceed with final practice that we recommended.

14. When the landowner does not decide to implement the proposed final practices in the plan immediately, sometimes all we can do is provide the landowner with guidelines about how he should proceed. With Rick's Mushroom Service, I did not develop a specific plan for the application rate that he should use to avoid runoff conditions, I provided guidelines to help him make that decision himself.

15. I and the other NRCS staff keep in contact with the landowners who have requested assistance from us, and can be available to design a particular feature of a facility if requested.

16. The NRCS inspects the site before agreeing to cost-share the costs of construction, but it is up to the landowner and the contractor to ensure that the structures are built correctly. We do not build facilities, we only provide an overall plan of environmentally sound practices and provide technical advice about how to proceed to implement those practices.

In accordance with the provisions of 28 U.S.C. , 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my personal knowledge.

Dated the 17 day of January, 2007.

Peter John Vanderstappen
Agriculture Engineer
USDA NRCS

# NRCS HANDBOOK

# TITLE 120

# PART 600.2 (D)

# COOPERATIVE AGREEMENTS

Exhibit 1-1 to 1-4

USDA United States Department of Agriculture Natural Resources Conservation Service NRCS eDirectives Electronic Directives System

Handbooks : Title 120 - Administrative Services

# Subpart A - General Information

Subpart A – General Information

* * *

600.2 Definitions

A. Applicant

An applicant is an individual, organization, agency, unit of Government or entity that submits an application for an NRCS grant or cooperative agreement.

B. Application

An application is a written request for an NRCS grant or cooperative agreement.

C. Contract

A contract reflects a relationship between NRCS and a commercial organization (contractor) or other entity when the principal purpose of the instrument is to acquire (by purchase, lease or barter) property or services for the direct benefit or use of the Federal Government, or when the agency decides the use of a procurement contract is appropriate.

Examples of contract acquisitions are as follows:

(1) Projects that support NRCS administration and management.

(2) Construction or rehabilitation services.

(3) Advisory and assistance services.

(4) Surveys, studies, and analyses that provide specific information to the Federal Government for its direct activities.

(5) Planning activities for Federal Government use.

(6) The development of management information systems or other data for Federal Government use.

(7) Production of publications or audiovisual materials for directly conducting the operation of the Federal Government.

Ex. 1-1

D. Cooperative Agreement

A cooperative agreement reflects an assistance relationship between NRCS and a State or local government or other recipient when the principal purpose of the relationship is to transfer a thing of value to a recipient in order to accomplish a public purpose of support or stimulation authorized by Federal law and substantial Federal involvement is anticipated. These agreements may be funded up to 100 percent by NRCS.

Substantial involvement means the recipient can expect agency collaboration or participation, or close agency oversight and control. Each cooperative agreement shall include an explicit statement of the nature, character, and extent of involvement by NRCS. Activities generally associated with substantial involvement are as follows:

(1) Authority to suspend work if specifications or work statements are not met.

(2) Review and approval of one stage of work before another can begin.

(3) Review and approval of substantive provisions of proposed sub-grants or contracts beyond existing Federal policy.

(4) NRCS and recipient collaboration or joint participation.

(5) Project monitoring to permit specified kinds of direction or redirection of the work because of interrelationships with and impacts on other projects.

(6) Highly prescriptive NRCS requirements which limit recipient discretion.

(7) Review and approval of key personnel.

(8) Direct NRCS operational involvement or participation during the activity.

E. Domestic Grants and Cooperative Agreements

Domestic grants and cooperative agreements are those entered into between the NRCS and a recipient located and operating within the United States, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands of the United States, Guam, American Samoa and the Commonwealth of the Northern Mariana Islands.

F. Financial Assistance

Financial assistance includes a transfer of anything of value to a recipient to accomplish a public purpose of support or stimulation.

G. Grant

A grant agreement reflects a relationship between NRCS and a State, local government or other recipient when the principal purpose of the relationship is the transfer anything of value to a recipient in order to accomplish a public purpose of support or stimulation authorized by Federal law and substantial Federal involvement is not anticipated. These grants may be funded up to 100 percent by NRCS.

Substantial involvement is not anticipated when the terms of an instrument indicate that the recipient can expect to run the project without Agency collaboration, participation, or intervention as long as it is performed in accordance with the terms of the instrument.

Ex. 1-2

The below activities are part of NRCS responsibility in providing sound fiscal oversight of Government-funded projects, and are not considered "substantial involvement."

(1) Approval of recipient plans or applications prior to award.

(2) Normal management activities during the project such as site visits, performance reports, financial reporting, and audits to ensure that standards, objectives, terms and conditions of the project are accomplished.

(3) General statutory requirements included in the award such as civil rights, environmental protection, and provisions for the handicapped, and administrative requirements such as those set forth in 7 CFR Parts 3015, 3016, and 3019.

(4) Review of performance after completion.

(5) Unanticipated NRCS involvement to correct deficiencies in project or financial performance from the terms of the assistance instrument.

H. Grants and Cooperative Agreements with Foreign Countries

NRCS dos not have authority to provide financial assistance to foreign countries.

I. Recipient

A recipient is an applicant who has been awarded a grant or cooperative agreement and receives Federal financial assistance.

J. Responsible Official

A Responsible Official is a program manager, or other person responsible for developing project requirements, and pre-award and post-award administration.

This includes tasks such as—

(1) Conflict of Interest, Confidentiality and Financial Disclosure. An employee who serves as a Responsible Official must file a financial disclosure report. (See General Manual Title 110, Part 405, Ethics.) A Responsible Official must also sign a Conflict of Interest and Confidentiality Statement [Exhibit 600.115] before commencing responsibilities as a Responsible Official.

(2) General information. Name of project, and eligible applicants (based on program authority);

(3) Proposal information. Project description (statement of work), purpose/objective, benefits (who, how and why), duration of project, and authority (Public Law or U.S.C.), activities NRCS will support and program priorities throughout the agreement, evaluation factors for award (e.g., allowing prospective awardees to offer some level of funding to decrease the Federal outlay); identify name/phone number of Point of Contact personnel;

(4) Funding information. Estimated project cost, NRCS contribution (funds, personnel, commitments, etc.), and funding source;

(5) Review Board. Recommends to Signatory Official appointees to the Review Board;

(6) Evaluation. Works with Review Board to rank and evaluate applications for award;

(7) Negotiations. Works with grant and agreement specialist in negotiating the award;

Ex 1-3

(8) Administration. Ensures technical compliance of project, certifies payment requests (refer to SF-270), review and accept status and progress reports and Financial Status Report, SF-269, and develop appropriate written documentation for amendments;

(9) Ethical Considerations. Ensures that ethics issues have been appropriately addressed. Obtains guidance as needed from the NRCS Ethics Office to insure that NRCS does not knowingly proceed in violation of the ethics rules for employees or grantees.

(10) Closeout. Responsible for approval and acceptance of final project including resulting product, reports, etc.

K. Grants and Agreements Specialist

The Grants and Agreements Specialist shall provide support including advertising, evaluating, negotiating and administering grants and agreements in accordance with the FGCAA. The Specialist shall also be assigned as the lead negotiator and make recommendations to the Review Board.

L. Signatory Official

A Signatory Official has final authority, such as the Chief and others as identified in the Delegations of Authority in General Manual 130, Part 400, to obligate the Government. For grants and agreements, this cannot be re-delegated below the level of State Conservationist. Any waivers or exceptions to the competitive process may not be re-delegated below the level of State Conservationist. The Signatory Official shall assign the appropriate administrative, program, and other employees to each specific agreement or grant project.

Ex 1-4

# NRCS GENERAL MANUAL

## TITLE 120

## ADMINISTRATIVE SERVICES

## PART 404.0 - 404.53

Exhibit 2-1 to 2-10

USDA United States Department of Agriculture Natural Resources Conservation Service | NRCS eDirectives Electronic Directives System

**General Manual : Title 120 - Administrative Services**

## Subpart A - General

404.0 General

(a) This part sets forth Natural Resources Conservation Service (NRCS) policy and procedures for installation of conservation treatment through long-term contracts (LTC) either with conservation districts or directly with individual participants under all NRCS cost-share programs where LTCs are authorized. The Rural Abandoned Mine Program and Wellton-Mohawk project are excluded. Policy for Long-Term Agreements, (LTAs) is contained in the National Manual for Assisting ASCS Cost-Sharing Programs, parts 535 through 541. Subpart C is recommended for preparation of LTCs for state and or locally funded long-term cost-share programs. If an unusual situation arises or a special condition exists, a letter requesting an exception to the policy in this part will be sent to the Chief. The letter must provide adequate rationale for the request.

(b) Long-Term Contracts are binding contracts which will spell out the participants', NRCS or conservation district responsibilities, and the consequences of violating the contract. An LTC requires the participant to carry out the work with his or her own resources or contract for the work. The basis for the LTC is an approved plan/schedule of operations developed by the participant and approved by NRCS.

(c) NRCS will provide available technical assistance when requested for developing plans and installing scheduled conservation practices. Participants are to be encouraged to use assistance available from other Federal and state agencies and private sources. Technical assistance for planning and installing conservation treatment may be provided by sources other than NRCS. NRCS must approve any technical assistance and conservation plans prepared by non-NRCS personnel.

(d) Cost-share payments are made to participants upon satisfactory completion of installation of the practices or identifiable components of practices. Participants may use any annual Federal cost-sharing program in carrying out non-cost-share items unless restricted by other program policies.

(e) Payments made to participants under NRCS - land user contracts are reported to IRS on Form 1099-G by NFC. Conservation districts are responsible for reporting of cost-share paid to participants on Form 1099-G as a result of project agreements.

(f) Time and progress should be recorded in accordance with the current National Reporting Codes Handbook.

* * *

404.2 Definitions.

(a) **Affiliated Persons.** Spouse, minor children, estate ??sts, partnerships and joint ventures that individual filing or the spouse or minor child has an interest in; and corporations that the individual filing or the spouse or minor children have more than a 20 percent interest.

(b) **Applicant.** A land user who has declared in writing the intention of participating in a long-term contract.

Ex. 2-1

(c) **Average costs.** The calculated cost, determined by averaging recent actual costs and current cost estimates, considered necessary for a participant to carry out a conservation practice or a designated component of a conservation practice. Actual cost includes labor, supplies, and other direct costs required for physical installation of a practice.

(d) **Case file.** A document folder maintained in the NRCS field office for recipients of NRCS technical assistance. It may contain information regarding inventory, evaluation, decisionmaking, and implementation.

(e) **Compensatory treatment**. The installation of one or more conservation practice to replace a practice destroyed or removed.

(f) **Component.** See Identifiable component.

(g) **Conservation district.** A subdivision of a state or territory organized pursuant to the State Soil Conservation District Law, as amended. This includes conservation districts organized pursuant to the Indian Reorganization Act of 1932, or 1934 or by tribal law. In some states these are called soil conservation districts, soil and water conservation districts, resource conservation districts, or natural resource districts. Conservation districts are locally created and operated. They are controlled by an elected and/or appointed governing body, generally made up of resident land users. In most states, conservation districts are under the general supervision of a state soil conservation commission, committee, board, or agency. Functions, operations, purposes, and powers of conservation districts vary widely from state to state.

(h) **Conservation practice.** A measure commonly used to meet a specific need in planning and carrying out soil and water conservation programs for which standards and specifications have been developed. (It may be all or part of a resource management system.)

(i) **Contract item number (CIN).** A number or number and letter used to identify required practices and identifiable components, respectively. (In LTAs the term is AIN.)

(j) **Contracting officer (CO).** The NRCS or conservation district employee authorized to sign long-term contracts.

(k) **Cooperator.** An individual, group of people, or representative of a unit of government who has entered into an understanding, working arrangement, or cooperative agreement with a conservation district (or association of conservation districts) to work together in planning and carrying out soil and water resources use, development, and conservation on a specific land area.

(l) **Cost.** The amount actually paid or engaged to be paid by the participant for equipment use, materials, and services for carrying out a practice, identifiable component, or if the participant uses own resources in carrying out an identifiable component, the constructed value of own labor, equipment use, and materials.

(m) **Cost list.** A list of practices which includes average cost, cost-share methods, and cost-share rate.

(n) **Cost-share payments.** Payments made to or on behalf of a participant at established rates as specified in contracts for carrying out a conservation practice or an identifiable component of such practices according to the contract.

(o) **Cost-share rate (%).** The percentage of the cost paid by the Federal Government for completing the installation of a practice.

(p) **Entity.** A corporation, partnership, trust, tribe or other legally formed group.

Ex. 2-2

(q) **Finding of fact.** A letter written by the district conservationist to the contracting officer informing of the situation involving noncompliance with a contract. It should state the situation, discuss the documentation that support noncompliance and recommend additional treatment to resolve the problem.

(r) **Flat rate ($).** A fixed dollar amount paid for carrying out certain conservation practices on a per-unit basis.

(s) **Government representative, (GR).** An NRCS employee designated by the state conservationist to be responsible for the day-to-day administration of a project agreement for NRCS functions relating to long-term contracts between the conservation district and the participant.

(t) **Identifiable component.** All of an eligible conservation practice, or a part thereof, that when carried out can be clearly identified as a segment in the sequence of carrying out the conservation practice.

(u) **Joint agreements.** (Also called pooling agreements.) Two or more participants who are cooperating to carry out conservation practices that can best be accomplished by combining resources.

(v) **Land unit.** Part or all of an operating unit.

(w) **Land user.** Any eligible land user, producer, operator, lessor, o???pier, group, nonpublic legal entity, or other who individually, collectively, or by other arrangement has conservation planning and implementation responsibility for the land involved.

(x) **Long-term contract.** (LTC), (Called long-term agreement LTA, by ASCS.) A binding agreement between NRCS or the conservation district and the participant which is based on the plan of operations and provides for cost-sharing of the conservation treatmen.

(y) **Operating unit.** A parcel or parcels of land, whether contiguous or noncontiguous, constituting a single management unit for agricultural purposes. (An operating unit shall be designated as located in the county in which the principal dwelling is situated, or if there is no dwelling thereon, it shall be regarded to be in the county in which the major portion of the land is located. Questionable cases will be decided by the state conservationist before the contracting officer signs the contract.)

(z) **Participant.** Any land user who is a party to an executed long-term contract.

(aa) **Plan of operations.** A written plan of farming or ranching operations designed tosolve identified problems. It schedules the participant's decisions concerning land use, management systems, and cost-shared and non-cost-shared practices to be installed on all land in the unit to protect, develop, and use the soil, water, and related resources. (Also referred to as a conservation plan of operations or plan/schedule of operations, CPO.)

(bb) **Program plan.** A broad plan of action developed to achieve specific goals of a USDA program.

(cc) **Project agreement.** A written agreement between NRCS and the conservation district establishing detailed working arrangements for the installation of conservation treatment.

(dd) **Required conservation treatment.** The combination of conservation practices that, when installed, will provide the treatment required to solve the identified problems to the degree needed to meet identified program objectives or project plan requirements. This treatment may or may not be cost-shared.

(ee) **Resource management system.** A combination of conservation practices and management identified by the primary use of land or water that, if installed, will at a minimum, protect the resource base by meeting acceptable soil losses, maintaining acceptable water quality, and

Ex. 2-3

maintaining acceptable ecological and management levels for the selected resource use. Resource management systems, in addition, may include conservation practices or management to achieve NRCS mission objectives.

(ff) **Statement of fact.** A letter from the contracting officer to the state conservationist for concurrence that outlines a course of action that corrects a noncompliance where no forfeiture, refund or pay adjustment is needed.

(gg) **Violation of Compliance Provisions.** For the purpose of determining loss of benefits, a violation is deemed to have occurred when reported through the ASCS Kansas City Computer System. Violations may occur on tracts operated by the participant as well as on tracts with which the participant may be affiliated.

---

## Subpart C - Plan/Schedule of Operations

404.20 General.

The basis for a long-term contract (LTC) is an approved plan/schedule of operations developed by the applicant with assistance from NRCS and the conservation district. The plan/schedule of operations is to include the portion of the land controlled by the applicant and requiring treatment as specified in the program plan. The plan/schedule of operations is to include all required conservation treatment (see definition) before it can be accepted and approved. Except for GPCP, a plan/schedule of operations may cover less than the entire farm but must cover the entire problem area. For GPCP, the plan/schedule of operations is to include all land controlled and managed as an operating unit.

* * *

404.25 Approval by NRCS.

The plan/schedule of operations and contract modifications are to be approved by the DC. This includes approval of plans developed by other agencies. The DC's signature constitutes certification that the scheduled contract items provide for safe and practical land use of all land under contract and the required conservation treatment to achieve planned program objectives.

---

## Subpart E - Contracting

404.40 Methods.

(a) Project agreement between NRCS and conservation district and an LTC between conservation district and land user.

(1) This approach requires a project agreement, (Exhibit 404.80), with the conservation district. The project agreement provides funds for cost-share payments to participants for installing conservation treatment. Project agreements shall detail the working arrangements and applicable operating regulations between NRCS and the conservation district. NRCS will execute a project agreement with the conservation district that will identify the parties involved, their responsibilities, and the appropriations and amount to be obligated by NRCS. This agreement is the Federal fund-obligating document. Project agreements must support the kind, amount, and general location of conservation treatment agreed upon in the project plan.

Ex. 2-4

(2) Cost-sharing will be carried out through LTCs between the conservation district and individual participants for land treatment installed on land that these individuals own or control. An approved plan/schedule of operations is a prerequisite for financial assistance. The plan/schedule of operation to solve identified problems will be used as a basis for developing the LTC.

(3) Cost-share payments are to be made by the conservation district after a practice or identifiable component of the conservation practice has been completed and certified. Payment shall be based on the cost-share prescribed by NRCS. Participants must file an application for payment.

(b) LTC between NRCS and participant.

(1) Cost-sharing arrangements for installation of conservation treatment will be made through LTCs with participants on the land they own or control. An approved plan/schedule of operations is a prerequisite for financial assistance. The plan/schedule of operation to solve identified problems will be used as a basis for developing the LTC.

(2) Cost-share payments are to be made by NRCS after a practice or identifiable component of the conservation practice has been completed and certified. Payment shall be based on the cost-share prescribed by NRCS. Participants must file an application for payment.

404.41 Responsibilities.

**Joint Responsibilities:**

The contract is to be based on the participant's plan/schedule of operations regardless of who develops the contract. The DC is to assemble the contract and forward it to the CO for review, fund certification, and signing.

**NRCS:**

(a) The state conservationist is responsible for designating the contracting officer (CO) in situations where NRCS will contract directly with the land user. Whenever an area conservationist (AC) is designated as the CO, the state administrative officer (SAO) will spot check for contractual procedures and provide needed guidance and training on contracting.

(b) When the conservation district is involved, the state conservationist will designate a government representative (GR) to work with the CO assigned by the conservation district. The GR will administer the terms of the project agreement and be assured that the LTCs are being carried out in accordance with NRCS procedures. The GR will represent NRCS at any hearing conducted by a conservation district.

**District:**

The conservation district will designate a CO for conservation district-participant contracts. NRCS employees may not be designated as the CO for these contracts.

404.42 Other Responsibilities.

(a) The participant will--

(1) Carry out land use changes and conservation treatment according to the plan/schedule of operations, which is made a part of the contract, and in accordance with specifications in the NRCS field office technical guide or NRCS approved special design;

(2) Submit to NRCS or the conservation district an application for payment and itemized statements of cost of materials and copies of contractor's invoices whenever practices are cost shared on an actual-cost basis;

Ex 2-5

(3) Permit free access for NRCS and conservation district representatives to provide technical assistance and inspect the work at any reasonable time during the life of the installed practices;

(4) Forfeit all rights to further payments under the contract and refund to NRCS or the conservation district all contract payments received upon termination of the contract unless the termination is due to situations cited in 404.56 (h) (1) or (2) or (3).

(5) Upon transfer of his or her right and interest in the land unit during the contract period, forfeit all rights to further payments under this contract;

(6) Upon termination of the contract refund to NRCS or to the conservation district if under a project agreement, all payments made under the contract, unless the termination is due to situations cited in 404.56 (h) (1) or (2) or (3).;

(7) Maintain the conservation treatment installed on the land unit as provided in the plan/schedule of operations.

(b) NRCS or the conservation district(s) will--

(1) Establish the cost-share rate;

(2) Provide authorized technical assistance, including but not limited to--

(i) Obtaining basic information;

(ii) Preparing drawings, designs, and specifications;

(iii) Performing layout;

(iv) Inspecting during installation; and

(v) Certifying on completion of installation.

(vi) Maintain record of location of contracts. A map may be used.

(vii) Maintain the following records for all expired or terminated contracts for 10 years following expiration or termination.

(1) Contract number

(2) Legal description

(3) Cost-share funds received

(4) Date of expiration or termination.

(3) Make payment to the participant covering NRCS's share of the cost when--

(i) The technical adequacy and amount of work installed is checked and certified by NRCS; and

(ii) The participant has furnished required certifications and itemized statements of cost of materials and copies of contractor's invoices when practices are cost-shared on an actual cost basis.

(iii) It has been determined that the participant is eligible to receive USDA benefits.

Ex. 2 - 6

# Subpart F - Contract Administration

404.50 Modifications.

(a) General.

(1) To modify a participant contract, use Form SCS-LTP-12, Revision of Schedule of Operation or Modification of Contract.

(2) The basis for modifying the contract must be stated clearly on the modification or on an attachment to the modification.

(3) Contract items may not be modified to reschedule to avoid loss of cost-share due to violation of FACTA compliance provisions but must be completed as scheduled without cost-share.

(b) Actions not requiring modifications.

(1) If the criteria listed under (2) below are met, the actions that do not require modification are--

(i) Substitution of seed or fertilizer mixtures or rates;

(ii) Change in average cost;

(iii) Change in the amount of a practice;

(iv) Substitution of one non-cost-shared practice for another.

(2) The following are the criteria for not requiring modifications:

(i) The cost-share payment is not significantly increased or decreased (each state is to supplement this directive to specify what is considered significant); and

(ii) The changes are in accordance with planned objectives and the NRCS technical guide.

(3) The change of a contract item that is not considered significant and therefore is not covered by a modification must be explained on the Application for Payment Form, SCS-FNM-141.

(4) Changes in time schedule. Contract items may be accomplished at any time prior to or not later than 1 year after the year scheduled unless timely "t." See special provisions. Where this provision is used, it will be noted on the next status review. All required treatment must be installed at least 2 years before expiration of contract.

(c) Actions requiring modifications.

(1) Adding land. Both the participant and the CO must agree to add land that is not currently under an existing contract. Enough time must remain under a contract to meet the 2-year requirement to establish needed land treatment on any land to be added. If the land being added is already under contract, see 404.55 for procedure.

(2) Deleting land. See 404.55 for procedure.

(3) Changing contract period. For contracts exceeding 3 years, the contract period may be reduced with the approval of the CO if it is mutually beneficial. The contract period may not be reduced to

Ex. 2-7

satisfy or avoid contract violation problems or avoid the 2-year requirement. It cannot be used to reduce the contract to fewer than 3 years. Contracts can be modified to lengthen up to 10 years. All recurring management practices must be extended accordingly.

(4) Adding contract items. All new contract items that are to be installed as part of the contract are to be added to the LTC before performance on the new item is started. This includes adding an item to provide for the reapplication of a practice or identifiable component.

(5) Deleting contract items. A contract is to include all conservation treatment agreed to by the participant that will accomplish the program or project plan objectives. A participant is expected to carry out all scheduled practices. There must be valid reasons not adverse to the Government's interest and conservation objectives for deleting any contract item. Each modification must include sound justification for the deletion. For items to be cost-shared under other programs or completed without cost-sharing, only the cost-share information is to be deleted and the items are to be shown in the plan as numbered non-cost-shared (N/C) items.

(6) Changing time schedule. See the time schedule provision of the special contract provisions (Exhibit 404.89) for exceptions to the need to modify changing time schedules. Modification for rescheduling should not be approved after the 8th year of a contract because the 2-year establishment period could not be met.

(7) Changing specifications or materials. Modifications to authorize changes in specifications or materials may be made if the changes meet NRCS requirements.

(8) Significant changes in cost-share payments.

(i) Modifications for increasing or decreasing average cost, specified maximum costs, or flat rates are required when the change in the cost-share obligation is significant or failure to modify the contract would result in extensive loss to the participant.

(ii) Modifications that significantly increase average costs and make no other change need only the signature of the CO.

(iii) Modifications that significantly increase or decrease average or specified maximum costs are to be limited to works that are scheduled or planned for installation in the current year. The contract cannot be modified to increase average costs for a practice after a participant has started work on the respective practice.

(iv) Modifications to change the amount of a practice are required if the increase or decrease in amount is known before actual installation and will result in a significant increase or decrease in the cost-share obligation. Where the need becomes apparent during installation, a modification is needed before work is continued.

(9) Permitting participants to destroy a practice. A modification is required to permit a participant to destroy any practice established under the contract or any existing practice for which maintenance is specified in the contract. It is the participant's responsibility to obtain approval from the agency concerned to destroy a practice that was cost-shared under any other conservation program if the practice has not fulfilled its life span or maintenance requirements.

(i) The CO must establish clearly defined needs before approving the destruction. It must be considered essential to the most practical operation of the land unit.

(ii) The destruction of the practice must be followed with needed compensatory treatment to meet the minimum required treatment and to preserve the effectiveness of other practices already installed on the land unit.

(iii) All NRCS cost-share payments made for (successfully completed) practices destroyed are to be deducted from the cost-share payment due for the replacement practice. Additional eligible costs

Ex. 2-8

that result from carrying out a replacement practice may be authorized for cost-sharing. If compensatory treatment consists of non-cost-shared practices, all cost-share payments made for the destroyed (successfully completed) practice are to be refunded by the participant. The refund may be deducted from future cost-share payments due the participant. NRCS can assist other Federal agencies in their program debt collection if formally requested. Deductions are to be entered on the "Other" deduction line of Form SCS-FNM-141, Application for Payment.

(iv) Failure to replace the destroyed practice with needed compensatory treatment constitutes violation of the contract, and all NRCS cost-share payments made for the destroyed practice are to refunded by the participant.

(10) Adding special provisions and supplements. Special provisions, terms, conditions and supplements may be added to a contract by modification.

(11) Changing method of cost-sharing. Contracts may be modified to change the method of cost-sharing at any time before the date a practice is started.

(12) Modifications to existing contracts are needed to substitute a practice not included in the project plan.

(d) Modification Procedures.

(1) Indicate modifications to the contract by recording the number of the modification in the reference column of Form SCS-LTP-11, 11A or 12 on the line of the contract item that is modified. To determine the status of contract items, all modifications and the CPO must be checked. All entries for a CIN will be lined out when modified and the modification number will be shown in the reference column of the SCS-LTP-11, 11A, or 12.

(2) The effective date of a contract modification is the date it is signed by the CO. The DC is to initial all modifications to show technical approval before transmitting them to the CO for signing. No cost-share payments may be made for new work included by a modification if the application work is started before the modification is signed by the CO indicating funds are available. However, if obtaining the signature of the CO will delay practice application, the CO may give approval by telecommunications and document the file to support the action.

(3) Funds scheduled for cost-sharing any practice may be delet'd from a plan and contract by modification if a participant elects to carry out the practice under another cost-sharing program or at his or her own expense before installation is started. If any part of a practice is begun before modification of a contract, all of that practice must be carried out under that cost-sharing program.

(4) The consecutive numbering of contract items is to be continued for new items added by modifications and is to be maintained for the life of the contract. The originally assigned item number is to be used for any item that is modified.

* * *

404.53 Reapplication of conservation treatment.

(a) Contracts may be modified to cost-share reapplication of practices that failed to achieve desired results, provided reapplication is required to solve the identified problem to the degree needed to meet program objectives, the specifications for the practices were met in the original application, and failure was caused by circumstances beyond the control of the participant. Failure of a practice because of circumstances within the control of the participant constitutes a violation of the terms and conditions of the contract.

(b) Reapplication of practices will not be scheduled until the original application has failed. Reapplication of cost-shared practices may be approved by the CO after the 8th year of a 10-year contract if needed. It may not be carried out after the contract expires.

Ex. 2-9

(c) The cost-share rate for the reapplication is to be the same rate established in the original contract. Contract items included on modifications for reapplying practices are to be numbered the same as the original contract item, suffixed with the letters "RA."

(d) The program limitation does not apply where practices fail through no fault of the participant.

404.54 Second contracts.

(a) Second contracts are subsequent contracts entered into with the same or new land user on the same land unit or an operating unit made up primarily of land under previous long-term contracts.

(b) Second contracts may be developed for only the dollar amount difference remaining between the amount expended on the original contract and the program limitation. Where practice failure occurs and reconstruction would require exceeding the program financial limitation, a new limitation may be approved by the Chief. Second contracts cannot be used to avoid the $10,000 limitation for irrigation practices under GPCP.

(c) Second contracts may not be entered for the purpose of circumventing financial or contractual limitations -- for example, to permit beginning or completing practices planned but not completed under the initial contract; primarily for purposes such as converting grassland enterprises to cash grain, developing new or redesigning irrigation systems, or converting conventional terraces that meet the conservation needs to parallel; or to replace treatment, established or maintained under the previous contract, which has been destroyed.

(d) Second contracts may be entered into for the following--

(1) Practice failure. To repair or reconstruct practices, cost-shared under previous contract, that failed for reasons beyond the control of the participant;

(2) Initial contract terminated. With new participants only, to apply needed conservation practices on land units under previous contracts terminated for cause or by mutual consent before the planned practices were applied;

(3) New land units. To make land use adjustments and apply needed conservation practices on new land units created through subdivision of a larger unit or through combination of smaller units under a previous contract. Examples: conversion of cropland to grass, water development, fences and related practices; and

(4) Advanced technology. For conservation, development, and use of soil and water resources not considered feasible under the initial contract. Examples are installation of artesian or deep wells, pipeline water distribution systems, or additional fences and water facilities needed to establish specialized grazing systems.

Ex. 2 - 10