# EXHIBIT "B"

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| RICK'S MUSHROOM SERVICE, INC.<br>1007-1013 Newark Road<br>P.O. Box 416<br>Avondale, PA 19311 | : Case No. 06 255C<br>: Judge Christine Odell Cook Miller |
| v. | |
| UNITED STATES OF AMERICA, acting through the UNITED STATES DEPARTMENT OF AGRICULTURE NATURAL RESOURCE CONSERVATION SERVICE<br>United States Department of Agriculture<br>Washington, DC 20250 | |

## AMENDED COMPLAINT

Plaintiff Rick's Mushroom Service, Inc. ("RMS"), by its undersigned counsel, for its Amended Complaint against the United States of America, acting through the Department of Agriculture, Natural Resource Conservation Service ("NRCS"), alleges as follows:

## I. SUMMARY OF THE ACTION

1. This is an action for equitable indemnity, breach of contract and professional negligence against the United States of America, acting through the United States Department of Agriculture, Natural Resource Conservation Service ("NRCS"). In September 1997, the Plaintiffs predecessor entered into a contract with the NRCS for a Cost-sharing arrangement, in which the NRCS would design and construct a spent mushroom substrate transfer and recycling facility. The contract provided for a sharing of costs and specifically required that the Plaintiff adhere to the specifications for the

facility generated by the NRCS. The Plaintiff did everything required of it under the contract and the facility was constructed pursuant to the specifications mandated by the NRCS. Subsequently, a neighboring landowner brought a Citizens Suit under the Clean Water Act alleging, inter alia, that the facility, as constructed, constituted a "point source" under the Clean Water Act and that, as designed, the facility could not handle the amount of waste water generated without discharges to the navigable streams of the United States. Although the case was contested by RMS, the District Court entered a permanent injunction in March, 2004 requiring the Plaintiff to obtain permits for the facility and make specified changes to the facility to prevent further discharges. The NRCS then developed what is entitled a "rehabilitation plan" for the facility, recognizing that the original design was potentially faulty. In the defense of the District Court litigation, the Plaintiff RMS has incurred substantial costs for which it is entitled to equitable indemnification from the NRCS. Plaintiff is also potentially liable for significant fees and penalties as a result of the NRCS' breach of warranty and professional negligence. Plaintiff therefore seeks an award of damages for indemnification for the District Court claim, as well as for breach of contract and professional negligence.

## II. THE PARTIES

2. Plaintiff Rick's Mushroom Service ("RMS") is a Pennsylvania corporation with a principal place of business at 1007-1013 Newark Road, New Garden Twp, P.O. Box 416, Avondale, PA 19311. RMS is the legal successor to Custom Casings, Inc., the contracting party with the NRCS.

3. Defendant United States of America acted herein through the United States Department of Agriculture, Natural Resource Conservation Service ("NRCS"), a

subdivision of a Federal agency with a principal address located in the United States Department of Agriculture, Washington, DC 20250.

## III. JURISDICTION

4. This Court has jurisdiction under the Contract Disputes Act, 41 U.S.C. ¶609(a)(1), and the Tucker Act, 28 U.S.C. § 1491 (a).

## IV. FACTUAL BACKGROUND

5. Chester County, Pennsylvania is, and long has been, one of the primary areas in the United States, and certainly in the Commonwealth of Pennsylvania, for the production of mushrooms.

6. The growing of mushrooms requires a rich organic base known as "mushroom substrate" comprised of a mixture of organic materials including agricultural wastes, manure and other substances. This organic mix is used as a base for the mushroom growing process.

7. Upon the harvest of a particular mushroom crop, the mushroom substrate is "used up" of its nutrients and must be disposed of. For many years, mushroom farmers simply dumped this spent mushroom substrate ("SMS") in fields and in the woods, such that the SMS would leach its nitrogen and other byproducts into nearby streams and rivers without any controls. The property now operated as RMS for many years was a place where SMS was simply dumped by farmers such that in 1996, the property (approximately 25 acres) was nearly completely covered by SMS ranging from 10 to 15 feet deep from the property line all the way down to a nearby stream, known as Trout Run.

8. In 1996, M.A.Y. Farms, a land owner, whose principal is also in the

mushroom growing business, sought to purchase the subject property and lease a majority of the property to RMS for operation as an SMS transfer facility. Before completing the purchase, both the Pennsylvania Department of Environmental Protection ("DEPT') as well as the NRCS were consulted to determine what, if any, cleanup would be necessary for the property to be operated as an SMS transfer facility.

9. The NRCS, working in conjunction with the DEP, which was responsible for the enforcement of the Federal Clean Water Act in Pennsylvania, required that the property be entirely cleaned of existing SMS piles (well over 100,000 tons worth) and that the operator of whatever facility would be maintained at the property enter into a contract for the construction of an environmentally sensitive SMS recycling facility.

10. Accordingly, M.A.Y. Farms and Custom Casings, Inc. proceeded to clean up the entire property and entered into a long-term contract with the NRCS dated September 26, 1997 (Exhibit "A" hereto).

11. That contract provided *inter alia* that the NRCS would design an SMS transfer facility, together with a storage area, leaching field, waste water impoundment and spray system to be constructed at the facility and that RMS would have no right to deviate from the specifications provided by the NRCS.

12. Pursuant to the contract and design and specifications mandated by the NRCS, the facility was constructed and the parties shared the cost as per the contract. The intent of the NRCS, in consultation with the Pennsylvania DEP, was that the facility was not to be a "point source"as defmed under the Clean Water Act in that all spray system discharges from the facility were to be taken up by hayfields grown on the lower portions of the property.

13. In 2001, a neighboring landowner brought a citizens suit under the Clean Water Act against RMS and M.A.Y. Farms under the theory that the facility, as designed, constituted a "point source" under the Clean Water Act and the Pennsylvania Clean Streams Law. The Plaintiff argued that the facility, as designed, could not possibly handle all of the waste water that would be generated and that there would necessarily be discharges into Trout Run in violation of the Clean Water Act.

14. In March 2004, the District Court for the Eastern District of Pennsylvania entered a permanent injunction which found that (1) the facility as designed was a point source, (2) as a result of the design of the facility, there had been discharges in violation of the Clean Water Act and the Clean Streams Law and (3) requiring the operators of the facility to obtain permits as a waste water and solid waste facility.

15. As a result of the District Court's findings, Plaintiff was forced to settle the action for $950,000. Although the settlement has not yet been fully approved, there still may be an award for penalties and, in addition to the settlement amount, RMS has incurred substantial attorneys' fees and costs and expert fees and costs all totalling approximately $2 million dollars.

16. In recognition of the deficiencies in the design of the facility, the NRCS drafted a "rehabilitation plan" for the facility late in 2004 and also in 2005 drafted and/or secured plans for a roof structure which would eliminate the use of water at the facility and any potential discharges. However, notwithstanding its recognition of its responsibility for the claims made against the Plaintiffs in the District Court action, the NRCS has failed and refused to either indemnify the Plaintiff for its losses in reliance upon the plans and specifications prepared by the NRCS nor has it been willing to go

forward with and pay for the roof structure it proposed as a "fix" to the design error. Rather, the NRCS has left the Plaintiff out to "hang" as a result of its contractual reliance on the plans and specifications drawn up by the NRCS.

17. Plaintiff has submitted its claim to the Contracting Officer for NRCS, who denied the claim and provided Plaintiff with notice of its right to bring this action.

**V. CLAIMS FOR RELIEF**
**COUNT I - EQUITABLE INDEMNIFICATION - SPEARIN DOCTRINE CLAIM**

18. Plaintiff repeats and incorporates by reference its allegations 1 through 17 as if fully set forth herein.

19. Pursuant to the terms of the contract between Plaintiff and the NRCS, Plaintiff was required to strictly follow the plans and specifications drafted by the NRCS. No deviations were permitted under that contract.

20. The plans arid specifications designed by Defendant have been found to have been defective by the District Court. Plaintiff, which is legally responsible for those defects, has been forced to settle the District Court action for $950,000 and has incurred substantial legal costs and expert expenses in the defense of the District Court action.

21. As the designer of the facility, the NRCS warranted to Plaintiff that the specifications were not defective and it has primary liability with respect to claims emanating from the design, planning and construction of the facility. RMS' liability is merely secondary to that of the NRCS.

22. Under the precepts of equitable indemnity, the NRCS is liable to Plaintiff for all damages, costs and fees awarded against the Plaintiff in the District Court action, as well as the fees and costs incurred in the defense of that action.

23. By reason of the foregoing, the NRCS is liable to Plaintiff for all fees,

costs and civil penalties incurred and/or awarded against it in the District Court action, as well as the fees and costs incurred in the defense of that action.

WHEREFORE, Plaintiff demands judgment against the NRCS under a theory of equitable indemnification in an amount in excess of $1 million dollars, together with costs and fees and such other relief as this Court may deem just and proper.

**COUNT 11- BREACH OF CONTRACT**

24. Plaintiff repeats and incorporates by reference its allegations contained in Paragraphs 1 through 23 as if fully set forth herein.

25. Pursuant to the terns of the contract, the Plaintiff was required to follow all specifications and plans prepared by the NRCS in connection with the construction and operation of the facility.

26. The Plaintiff did, in fact, follow all plans and specifications and directives in operation but, there has been a judicial finding that the facility had a defective design, thus constituting a "point source" under the Clean Water Act and the Pennsylvania Clean Streams Law.

27. Where as here, the government provides design specifications which must be followed, it implicitly warrants that if the specifications are complied with, satisfactory performance will result.

28. The specifications have been found to be defective in that the specifications were intended to provide that there would be no discharges to Trout Run under normal use such that the facility could not, as a matter of law, be deemed to be a "point source".

29. Notwithstanding that implied warranty arising out of the contract between

the parties, the facility was improperly designed in that it could not handle the amount of waste water which could be generated in a particular year, according to the findings of the Court in the District Court action.

30. Indeed, the NRCS recognized the defective specifications by drafting a "rehabilitation plan", as well as suggestions for a roofed structure subsequent to the decision of the District Court.

31. By reason of the foregoing, NRCS has breached its implied warranties arising out of its contract with the Plaintiff and is liable for contract damages.

WHEREFORE, Plaintiff demands judgment on Count II of this Complaint for breach of implied warranty arising under contract in an amount in excess of $1 million dollars, together with costs and fees and such other relief as this Court may deem just and proper.

**COUNT III - PROFESSIONAL NEGLIGENCE**

32. Plaintiff repeats and incorporates by reference its allegations contained in Paragraphs 1 through 31, as if folly set forth herein.

33. By requiring the Plaintiff to follow all plans and specifications which it drafted as the designer of the project, the NRCS owed a duty of care to design the facility in a manner that would comply with all environmental rules and regulations and not subject the Plaintiff to a subsequent successor citizens suit for violation of the Clean Water Act and Pennsylvania Clean Streams Law.

34. In derogation of this duty, the NRCS designed a facility which has been found not to be capable of handling and recycling sufficient waste water such that the facility was deemed to be a "point source" under the Clean Water Act and for which the

Plaintiff was found to have violated the Clean Water Act and Clean Streams Law by operating a facility constituting a point source without a permit.

35. As a result of defendant's negligence in the design of the facility, the Plaintiffs have already incurred substantial costs and fees and have potential liability for an award of civil penalties.

36. By reason of the foregoing, the NRCS is liabile for professional negligence in its design of the facility.

WHEREFORE, Plaintiff demands judgment against the NRCS under Count III in an amount in excess of $1 million dollars, together with costs and fees and such other and further relief as this Court may deem just and proper.

October 23, 2006

Respectfully submitted,

By: [signature]

David J. Taylor, Esquire
Spriggs & Hollingsworth
1350 I Street, N.W.
Ninth Floor
Washington, D.C. 20005
(202) 898-5800

Of Counsel:

Jeffrey A. Krawitz, Esquire
Jonathan J. Bart, Esquire
Silverman Bernheim & Vogel
Two Penn Center
Suite 910
Philadelphia, PA 19102
(215)569-0000

**CERTIFICATE OF SERVICE**

DAVID J. TAYLOR, ESQUIRE, hereby certifies that he did cause a copy of the Amended Complaint to be served on the following parties as directed by the Notice of Electronic Filing:

Troy B. Mouer, Esquire
Office of the General Counsel
U.S. Department of Agriculture
P.O. Box 1134
Harrisburg, PA 17108

Joan M. Stentiford, Esquire
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L. St., N.W., 8th Floor
Washington, DC 20530

David J. Taylor, Esquire