# United States Court of Appeals for the Federal Circuit

2007-5137

RICK'S MUSHROOM SERVICE, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

FILED
AUG 18 2008
U.S. COURT OF FEDERAL CLAIMS

## JUDGMENT

ON APPEAL from the UNITED STATES COURT OF FEDERAL CLAIMS

CASE NO.: 06-CV-255

This CAUSE having been heard and considered, it is

ORDERED and ADJUDGED:

AFFIRMED.

ENTERED BY ORDER OF THE COURT

DATED APR - 2 2008

Jan Horbaly, Clerk

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: ________ Date: 5/27/08

ISSUED AS A MANDATE: MAY 27 2008

# United States Court of Appeals for the Federal Circuit

2007-5137

RICK'S MUSHROOM SERVICE, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Jonathan J. Bart, Wilentz, Goldman & Spitzer, P.A., of Philadelphia, Pennsylvania, argued for plaintiff-appellant.

Joan M. Stentiford, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were, Jeanne F. Davidson, Director, and Steven J. Gillingham, Assistant Director.

Appealed from: United States Court of Federal Claims

Judge Christine O.C. Miller

# United States Court of Appeals for the Federal Circuit

2007-5137

RICK'S MUSHROOM SERVICE, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 06-CV-255, Judge Christine O. C. Miller.

---

DECIDED: April 2, 2008

---

Before RADER, LINN, and PROST, Circuit Judges.

PROST, Circuit Judge.

This is an appeal from the United States Court of Federal Claims pertaining to a cost-share agreement between the government and Rick's Mushrooms, Inc. ("Rick's") for implementing conservation practices in a facility for recycling of mushroom waste. Rick's seeks indemnification from the government for costs incurred in defending and settling claims by a third party for violation of certain state and federal environmental laws. The Court of Federal Claims dismissed the action for lack of subject matter jurisdiction. For the reasons set forth below, we affirm.

I

Mushroom farming is a major economic activity in Chester County, Pennsylvania. Historically, the organic by-product waste of mushroom farming, known as "spent mushroom substrate" ("SMS"), was dumped in nearby woods or streams, resulting in severe nitrogen pollution. Rick's operates an SMS transfer facility, which processes SMS by leaching out the excess nitrogen and then recycling it as potting soil or other products.

The Natural Resources Conservation Service ("NRCS") was created by the Department of Agriculture Reorganization Act of 1994. The NRCS is specifically charged to cooperate with state and local soil and water conservation districts to carry out improvements under the Watershed Protection and Flood Prevention Act. As such, the NRCS has a cooperative arrangement with the Red-White Clay Creeks Watershed Protection Plan, which includes the region where Rick's SMS transfer facility is located. The NRCS is also authorized to enter into cost-share agreements with landowners or land occupiers to carry out conservation plans approved by the local soil and water conservation districts.

In 1996, M.A.Y. Farms, Inc. ("M.A.Y. Farms"), as a prospective purchaser of the property where Rick's is now located, consulted with the Pennsylvania Department of Environmental Protection ("PDEP") and the NRCS regarding what was necessary to operate an SMS transfer facility at that location. The NRCS required that the property be cleaned of existing SMS and that whoever operated the SMS transfer facility enter into a contract for construction of an environmentally sensitive SMS transfer facility. Thereafter, Custom Casings, Inc. ("Custom Casings"), the corporate predecessor to

Rick's, entered into a long-term lease with M.A.Y. Farms, the then owner of the property, and cleaned the property of existing SMS.

On September 26, 1997, the NRCS, after consultation with the PDEP and the Chester County Conservation District ("CCCD"), entered into a "Long-Term Contract for NRCS Cost Share Programs" with Custom Casings. J.A. 113-16. Pursuant to the contract, NRCS designed and provided specifications for conservation practices to be implemented at the transfer facility, including a storage area, leaching field, wastewater impoundment and spray system. Custom Casings was to install the components and operate the facility.

On July 26, 2001, Warren and John Reynolds, Rick's neighbors, and the Wilmington Trust Company ("Reynolds") filed suit against Rick's in the United States District Court for the Eastern District of Pennsylvania, alleging that Rick's operated the SMS transfer facility in violation of the Clean Water Act and the Pennsylvania Clean Streams Law, and that wastewater runoff from Rick's was entering a stream and contaminating the Reynolds's pond. In March 2004, the district court issued a permanent injunction requiring Rick's to obtain PDEP permits as a wastewater and solid waste facility. Reynolds v. Rick's Mushroom Serv. Inc., No. Civ.A. 01-3773, 2004 WL 620164, at *9 (E.D. Pa. Mar. 29, 2004). The court found that the CCCD had developed a Mushroom Farm Environmental Management Plan ("MFEMP"), and that Rick's failure

to comply with some of the operational requirements of the MFEMP had caused the contamination on Reynolds's property.[1] Id. at *2-5.

After the order by the district court, Rick's agreed to settle the case for $950,000. Thereafter, the NRCS drafted a rehabilitation plan and a plan for a roof structure to help eliminate some of the problems with waste discharge. The NRCS did not indemnify Rick's for its losses in the litigation and did not pay for the new roof structure.

On November 4, 2005, Rick's submitted a claim under the Contract Disputes Act ("CDA") to the contracting officer at the NRCS for $5 million in damages. J.A. 188-89. The claim alleged that the NRCS had breached its implied warranty of the specifications, and, as a consequence, Rick's had incurred additional costs, including attorneys' fees in defending the lawsuit brought by the Reynolds; the lost value of its contribution to the original design, its substantial design revisions, and the installation of the new roof structure; and its liability for environmental impact. J.A. 188-89. The NRCS contracting officer denied the claim, stating that because the contract was not a procurement contract for goods or services, but rather a cooperative agreement, the CDA was inapplicable. Id. at 138.

Rick's then filed suit in the Court of Federal Claims alleging that the Reynolds lawsuit and settlement was due to defective specifications drafted by the NRCS and that the NRCS should be liable for the costs incurred in the lawsuit. Rick's Mushroom Serv., Inc. v. United States, 76 Fed. Cl. 250, 254 (2007). Rick's had three legal theories

---

[1] Specifically, the court found that Rick's did not have a groundwater monitoring system, did not keep adequate records of the quantity of SMS stored, did not measure accurately the volume of leachate on its property, and did not maintain rain gauges. Reynolds, 2004 WL 620164, at *2-5.

for recovery: Count I, equitable indemnification based on an implied-in-fact warranty arising under the Spearin doctrine;[2] Count II, breach of contract; and Count III, professional negligence. Id. First, the court determined that Rick's had satisfied the administrative exhaustion requirements, at least with respect to Count I, because Rick's claim based on an implied-in-fact contract under the CDA had been submitted to the contracting officer for a final decision. Id. at 256. Nevertheless, the court held that it lacked jurisdiction over Rick's professional negligence claim because it was a claim sounding in tort. Id. The court further held that, because the contract between Rick's and the NRCS was a cooperative agreement and not a procurement contract, there was no basis for jurisdiction under the CDA for the breach of contract claim. Id. at 258. Finally, the court rejected the claim for equitable indemnification under the Spearin doctrine because it was precluded by the Anti-Deficiency Act. Id. at 261. The court, therefore, dismissed the case for lack of subject matter jurisdiction. Id. at 262.

On appeal, Rick's argues that the Court of Federal Claims erred in dismissing its contract claims, in denying it due process, and in failing to transfer the professional negligence claim to the District Court for the Eastern District of Pennsylvania. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

II

Subject matter jurisdiction is a question of law, which we review de novo. Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1078 (Fed. Cir. 2001). We review a denial of a request for additional discovery for abuse of discretion. Digeo, Inc. v. Audible, Inc., 505 F.3d 1362, 1370 (Fed. Cir. 2007); Forest Prods. N.W., Inc. v.

---

[2] See United States v. Spearin, 248 U.S. 132 (1918).

United States, 453 F.3d 1355, 1359 (Fed. Cir. 2006). A decision by the Court of Federal Claims concerning whether to dismiss a claim or transfer it to another court is also reviewed for abuse of discretion. LeBlanc v. United States, 50 F.3d 1025, 1031 (Fed. Cir. 1995). The underlying determination of whether the transferee court has jurisdiction over the claim is a question of law, which we review de novo. Acceptance Ins. Cos. v. United States, 503 F.3d 1328, 1332 (Fed. Cir. 2007).

III

A

Rick's argues that the Court of Federal Claims erred in dismissing its claims for lack of subject matter jurisdiction. The jurisdictional reach of the Court of Federal Claims is set forth in the Tucker Act. The Tucker Act provides:

> (1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. . . .
> (2) . . . The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

28 U.S.C. § 1491(a) (emphases added). The plain language of the Tucker Act excludes from the Court of Federal Claims jurisdiction claims sounding in tort. Id. § 1491(a)(1). A claim for professional negligence is a tort claim. GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., 449 F.3d 377, 385 (2d Cir. 2006); GLF Constr. Corp. v. LAN/STV, 414 F.3d 553, 555 (5th Cir. 2005); Piazza v. Ebsco Indus.,

Inc., 273 F.3d 1341, 1348 (11th Cir. 2001); White v. Napoleon, 897 F.2d 103, 114 n.4 (3d Cir. 1990). Therefore, the Court of Federal Claims did not err in concluding that it lacked subject matter jurisdiction to hear the professional negligence claim of Count III.

B

In Count II of the complaint, Rick's alleges that the government breached its contract with Rick's by providing defective specifications. Based on that alleged breach, Rick's seeks recovery for its direct costs in constructing the SMS transfer facility, clearing the property of accumulated SMS, making changes to the facility to prevent the overflow of pollutants, and ultimately in closing the facility.

The government's consent to suit under the Tucker Act does not extend to every contract. Kania v. United States, 650 F.2d 264, 268 (Ct. Cl. 1981); accord Sanders v. United States, 252 F.3d 1329, 1335 (Fed. Cir. 2001). The Tucker Act is merely a jurisdictional statute and does not create a substantive cause of action. United States v. Testan, 424 U.S. 392, 398 (1976). Therefore, the plaintiff must look beyond the Tucker Act to identify a substantive source of law that creates the right to recovery of money damages against the United States. United States v. Mitchell, 463 U.S. 206, 216 (1983).

Rick's breach of contract claim arises from its cost-share agreement with the government; however, the cost-share agreement does not provide a substantive right to recover money-damages and Rick's does not point to a money-mandating source of law to establish jurisdiction under 28 U.S.C. § 1491(a)(1) for its breach of contract claim. Instead, Rick's attempts to rely on the CDA as the source of its substantive right to recover money damages and to establish jurisdiction under 28 U.S.C. § 1491(a)(2).

The CDA, however, applies only to express or implied government contracts for procurement of goods or services. 41 U.S.C. § 602(a). In contrast, the cost-share agreement provided that Rick's would construct and operate its SMS transfer facility in accordance with government specifications and in return Rick's would be entitled to cost-share payments. The Court of Federal Claims went through a lengthy analysis explaining why the cost-share agreement is not a procurement contract. In particular, the court noted that the agreement did not provide for transfer of goods or services to the government, there was no evidence of a buyer-seller relationship, and the government did not receive a direct benefit from the operation of the SMA transfer facility. We find the court's analysis to be sound. Thus, the CDA is inapplicable to the cost-share agreement and there is no basis for jurisdiction under 28 U.S.C. § 1491(a)(2).

On appeal, Rick's argues that the Court of Federal Claims overlooked the fact that its breach of contract claim was based, in part, on an implied-in-fact contract. A claim to a breach of an implied-in-fact contract with the government fails for similar reasons. Rick's does not point to a money-mandating provision that establishes jurisdiction for an implied-in-fact contract under 28 U.S.C. § 1491(a)(1), and Rick's cannot establish jurisdiction under 28 U.S.C. § 1491(a)(2) because Rick's has not alleged an implied-in-fact contract for procurement of goods or services which would come within the CDA. Moreover, this court may only find an implied-in-fact contract when there is no express contract. Trauma Serv. Group v. United States, 104 F.3d 1321, 1326 (Fed. Cir. 1997). Here, Rick's and the government entered into an express contract.

In sum, Rick's cannot establish Tucker Act jurisdiction under either 28 U.S.C. § 1491(a)(1) or (2). Accordingly, the Court of Federal Claims did not err in holding that it lacked subject matter jurisdiction over Rick's breach of contract claim.

C

In Count I, Rick's seeks equitable indemnification based on breach of an implied-in-fact warranty by the government arising under the Spearin doctrine. Rick's acknowledges that there is no express provision in the cost-share agreement providing for indemnification by the government for third party claims. Nevertheless, Rick's argues that the government is liable to Rick's for the costs incurred in defending the lawsuit against Reynolds because the government, in providing detailed design specifications for the SMS transfer facility in the cost-share agreement, gave Rick's an implied warranty that the transfer facility would be adequate and that the government would be liable for the consequences of any defects. For the Court of Federal Claims to have jurisdiction over the implied warranty claim, the court must necessarily have jurisdiction over the cost-share agreement on which the implied warranty is founded. For the reasons discussed above, however, we find that the cost-share agreement does not provide Tucker Act jurisdiction.

In addition, we find that Rick's Spearin warranty claim fails for another reason. The Spearin doctrine provides that if a government contract contains detailed design specifications, as opposed to performance specifications, the government gives an implied warranty that if the specifications are followed an acceptable result will be produced. Stuyvesant Dredging Co. v. United States, 834 F.2d 1576, 1582 (Fed. Cir.

1987).[3] "When the government provides a contractor with defective specifications, the government is deemed to have breached the implied warranty that satisfactory contract performance will result from adherence to the specifications, and the contractor is entitled to recover all of the costs proximately flowing form the breach." Essex Electro Eng'rs, Inc. v. Danzig, 224 F.3d 1283, 1289 (Fed. Cir. 2000).

Spearin was a construction contractor, who entered into a fixed price contract with the government to build a dry dock according to plans and specifications prepared by the government. Spearin, 248 U.S. at 133. The plans contained a provision requiring relocation of a section of sewer. Id. at 133-34. After relocation of the sewer, a storm caused build up in internal pressure in the relocated sewer section and flooding of the dry dock excavation site. Id. at 134. The Court held that the provision requiring relocation of the sewer created an implied warranty by the government that if the specifications were complied with, the sewer would be adequate. Id. at 137. Because the sewer was inadequate, the Court held that the government had breached its implied warranty. Id. at 138. The doctrine has been applied, as in Spearin, to construction contracts with the government, White v. Edsall Constr. Co., Inc., 296 F.3d 1081, 1086 (Fed. Cir. 2002); Poorvu v. United States, 420 F.2d 993, 999 (Ct. Cl. 1970); Luria Bros. & Co. v. United States, 369 F.2d 701, 708 (Ct. Cl. 1966), as well as to other contracts for procurement of goods or services by the government. Essex Electro, 224 F.3d at 1289-90; USA Petroleum Corp. v. United States, 821 F.2d 622, 624 (Fed. Cir. 1987);

[3] "Design specifications explicitly state how the contract is to be performed and permit no deviations. Performance specifications, on the other hand, specify the results to be obtained, and leave it to the contractor to determine how to achieve those results." Stuyvesant Dredging, 834 F. 2d at 1582.

Ordnance Research, Inc. v. United States, 609 F.2d 462, 481 (Ct. Cl. 1979); R.E.D.M. Corp. v. United States, 428 F.2d 1304, 1308-10 (Ct. Cl. 1970).

Even if we were to find that the Spearin doctrine is applicable outside the procurement contract context, that the cost-share agreement contained design specifications as opposed to performance specifications, and that a defect in those specifications was the proximate cause of the lawsuit brought by Reynolds, we still could not find that Rick's is entitled to recover the costs of defending and settling the lawsuit. Such a finding is foreclosed by the Supreme Court's holding in Hercules, Inc. v. United States, 516 U.S. 417 (1996).

Hercules was a chemical manufacturer who manufactured Agent Orange for the government and sought to recover from the government costs incurred in defending and settling lawsuits brought by Vietnam veterans alleging health problems caused by exposure to Agent Orange. Id. at 419-20. The Court held that Hercules could not recover on an implied warranty under Spearin because such a warranty does not extend as far as third-party claims. Id. at 424-25. The Court further held that it could not find an implied-in-fact agreement by the government to indemnify for losses to third parties because the Anti-Deficiency Act ("ADA") would bar such an open-ended indemnification agreement. Id. at 426-28.

The ADA provides:

> An officer or employee of the United States Government . . . may not--
> (A) make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation;
> (B) involve [the] government in a contract or obligation for the payment of money before an appropriation is made unless authorized by law . . . .

31 U.S.C. § 1341(a)(1) (emphases added). Under the ADA, procurement agencies or employees are prohibited from "entering into a contract for future payment of money in advance of, or in excess of, an existing appropriation." Hercules, 516 U.S. at 427. This limitation on authority is equally applicable to implied-in-fact contracts as to express contracts. Id. at 428. Because the contracting officer would have no authority under the ADA to enter into an indemnity agreement without an appropriation, we cannot find an implied-in-fact warranty by the government to indemnify Rick's for its litigation costs in defending against third party claims. As recognized by the Court of Federal Claims, because the contracting officer had no authority to enter into an open-ended indemnity agreement, there could be no mutual intent to contract, a prerequisite for an implied-in-fact contract. Contrary to arguments advanced by Rick's, such an implied indemnification term would indeed be "open-ended" since the amount of the government's obligation to third parties would not have been known at the time the parties entered into the cost-share agreement. Furthermore, we find no basis to conclude, as Rick's urges, that the holding of Hercules with respect to application of the ADA was limited to design specifications. Accordingly, the Court of Federal Claims did not err in dismissing Rick's implied warranty claim for lack of subject matter jurisdiction.[4]

[4] Rick's contends that Lopez v. A.C. & S., Inc., 858 F.2d 712 (Fed. Cir. 1988), holds that the ADA does not shield the government from liability under a Spearin implied warranty because there is a standing appropriation to pay court judgments. However, discussion of the ADA in Lopez was not necessary to the decision in that case. The court's holding that there was no Tucker Act jurisdiction ultimately rested on its determination that the alleged warranty was implied-in-law and not implied-in-fact and, thus, the court did not reach whether an implied warranty would be illegal under the ADA. Id. at 716-17. Moreover, to the extent that the Federal Circuit's analysis in Lopez is in any way inconsistent with the Supreme Court's analysis in Hercules, the Supreme Court has effectively overruled Lopez.

D

On appeal, Rick's also asserts that it was deprived of due process on two accounts. First, Rick's avers that it was denied due process because the government first presented its argument with respect to the ADA during supplemental briefing. However, any party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time. Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006); Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004); Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998). Thus, Rick's was not denied due process even though the government did not raise the issue of the ADA until the supplemental briefing stage.

Second, Rick's argues that it was denied due process because the court did not permit discovery on allocation exhaustion after the ADA issue was raised. Rick's relies on the testimony of Peter Vanderstappen of the NRCS, who stated that between $500,000 and $700,000 was obligated each year to the Red-White Clay Creeks project. Rick's contends that there is no evidence that the money allocated to the project was exhausted and thus there should still be funds available to pay Rick's claim. However, Rick's misunderstands the import of the ADA. The ADA prohibits commitment of funds in advance of, or in excess of, an existing appropriation. Here, there was no appropriation for indemnification of third party claims. Therefore, additional discovery on whether or not certain government funds have been exhausted would have no impact on the court's determination of whether or not it had jurisdiction over Rick's implied-in-fact warranty claim. Hence, we find no abuse of discretion by the Court of Federal Claims in disallowing discovery on allocation exhaustion.

E

Finally, Rick's argues that the Court of Federal Claims abused its discretion in dismissing Rick's professional negligence claim, rather than transferring it to the district court. According to Rick's, 28 U.S.C. § 1631 mandates that the Court of Federal Claims shall transfer a claim over which it lacks jurisdiction to the court where the claim could have been brought. In this case, Rick's contends, the District Court for the Eastern District of Pennsylvania would have jurisdiction over its professional negligence claim under the Federal Tort Claims Act.

28 U.S.C. § 1631 provides:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed . . . .

The plain language of the statute requires that the transferee court have jurisdiction over the claim. We agree with the government, however, that here the district court lacks jurisdiction over the professional negligence claim.

The Federal Tort Claims Act provides that an action shall not be initiated in a district court unless the claimant has "first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . ." 28 U.S.C. § 2675(a); see Dancy v. United States, 668 F.2d 1224, 1227 (Ct. Cl. 1982). The claim that was submitted to the contracting officer was a claim based on the CDA for breach of an implied warranty of specifications. Even if the claim were a proper CDA claim, the denial of the claim by the contracting officer served only to establish jurisdiction in the Court of Federal Claims. It did not establish jurisdiction in the district court for a professional negligence claim. Rick's never presented a written

professional negligence claim for money damages to the U.S. Department of Agriculture. Therefore, Rick's did not satisfy the exhaustion requirements set forth in 28 U.S.C. § 2675(a) in order to establish jurisdiction in the district court.[5] As such, the Court of Federal Claims did not err in not transferring the professional negligence claim to the district court. We find no abuse of discretion by the Court of Federal Claims in its dismissal of the professional negligence claim.

IV

For the foregoing reasons, we affirm the Court of Federal Claim's dismissal of Rick's claims for lack of subject matter jurisdiction.

AFFIRMED

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE.

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
By: Date:

[5] The government also argues that Rick's failed to satisfy the exhaustion requirements set forth in the Department of Agriculture Reorganization Act. The Act provides that a final determination of the National Appeals Division is reviewable in district court, 7 U.S.C. § 6999, but that the appellant must first "exhaust all administrative appeal procedures established by the Secretary." Id. § 6912(e). As noted by the Court of Federal Claims, however, the regulations limit those appeals to challenges to "technical determinations and program decisions made by NRCS." 7 C.F.R. § 614.1. Because Rick's professional negligence claim does not relate to a technical determination or program decision, it does not appear to be within the ambit of the National Appeals Division. Thus, we disagree that Rick's was required to satisfy the exhaustion requirements set forth in § 6912(e).